UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA

        Plaintiff,

-vs-
                                      Case No. 14-CR-223

STEVEN P. LINK

        Defendant.

---

**DEFENDANT'S SENTENCING MEMORANDUM**

---

Steven Link, by counsel, submits the following memorandum in anticipation of his

sentencing on Monday, June 1, 2015. Counsel submits the following memorandum in support of

a mandatory minimum five years sentence being sufficient but not greater than necessary to meet

the requirements of 18 U.S.C. § 3553(a).

I.      **The Nature and Circumstances of the Offense and the History and Characteristics
of Mr. Link.**

This case involved law enforcement downloading a movie file containing child

pornography from an IP address using the E-mule peer to peer file sharing network.  The IP

address was registered and used by Mr. Link. A search of Mr. Link's bookstore and home

revealed further child pornography files that were located on his Acer laptop and external hard

drive. During the search of the bookstore, Mr. Link admitted that he had video cameras in the

bookstore bathroom and recorded various adult individuals inside the bathroom. The

investigation also led to an apartment above the bookstore that revealed the tenant of the

apartment, Kory Murphy, who was also an employee of the bookstore, also possessed child

pornography.

1

As the court is aware, Mr. Murphy has plead guilty and been sentenced for his possession of child pornography. Seeking leniency in sentencing, Mr. Murphy provided information to the Government implicating Mr. Link's involvement in certain activities. Understandably, one in Murphy's position would have the motive to fabricate and overstate certain facts involving Mr. Link to minimize his time incarcerated. With that being said, it is requested of the court, when imposing sentence, to give little to no weight to information provided by Mr. Murphy and to consider facts that are known to be true and free from bias.

As to those facts, Mr. Link has since taken full responsibility for his actions and plead guilty to a single count of receipt of child pornography. Mr. Link's remorse for such actions was demonstrated during his presentence interview. During the interview, Mr. Link expressed that he would give anything to undo the harm he caused, and acknowledged he has put his family, friends, and the community in a terrible position. He further expressed that he does not feel that he can be apologetic enough for his actions and would give anything to prove that he can be a good person. PSR at ¶ 24. Mr. Link has had no other criminal contact with the law and there is no indication that Mr. Link has engaged in any online chats with minors, produced child pornography, or showed any of the images or videos found in his possession to anyone else.

Mr. Link is 37 years old and is a loving husband of Katherine, father of Mia (4) and Ronan (16), son of Eva and Leonard, and brother of Dan and Jeff. Mr. Link's positive influence in his children's lives is well documented. After the birth of his son, Ronan, Mr. Link relocated his family from Rockford, Illinois to Madison, Wisconsin specifically for enrollment and involvement in the Wisconsin Early Autism Project. Ronan was diagnosed with Pervasive Developmental Disorder, an autism spectrum disorder. PSR at ¶ 24. Seeking the best care for his

child, Mr. Link relocated the family. In 2010, he and his new wife Katherine Johnson were blessed with a daughter, Mia.

Since the time of their birth, Ronan and Mia have been most important to him. PSR at ¶63. Based upon all accounts, nothing indicates otherwise. Law enforcement's investigation did not reveal any physical wrong doing by Mr. Link with his children or any other child. A few excerpts from letters of support from family, friends, and local Sturgeon Bay business owners highlight Mr. Link's relationship with his children, (attached as Exhibit A are the letters of support):

- "He was a perfect dad...I couldn't ask for a better dad." (Ronan Link)

- "Steven Link ... has demonstrated a genuine and pure love for his family." (Dr. Kurt Harris)

- "Steven also is a wonderful father and husband. I wish I could see more parents cherish their children as Steven cherishes his." (Elliot Goettelman)

- "It truly was a family atmosphere and you could feel the love between all of them when you walked into the shop and they were all there hanging with one another." (Kelly Avenson)

In addition to being a loving and caring father and husband, Mr. Link has extended his passion for the arts to the Sturgeon Bay and greater Door County community. Mr. Link devoted countless hours and time for this cause. Mr. Link served on the board of directors of the Third Avenue Playhouse, which local Sturgeon Bay business owner Kelly Avenson describes as "an integral part of our Third Avenue Business Association." He also volunteered his time and money to support the Festival of Trees at the Maritime Museum, Steel Bridge Songfest, Darksongs Songfest, and Love on Holiday Songfest. He also volunteered with the Friends of the Sturgeon Bay library whose efforts help to fund many valued library projects.

Although Mr. Link will forever live with the shame and heartbreak he has caused his community, many, including neighboring business owners and former patrons of the bookstore, will miss his involvement in the Sturgeon Bay business community. Kelly Avenson, owner of Greco Gallery and Avenson photography, a neighboring business to Mr. Link's bookstore writes that "Steven has been a good friend and great business colleague of mine for the past 4.5 years… Steven is truly an asset to our community, a great friend…" Elliot Goettelman, another neighboring business owner to the bookstore, writes that "Steven has always been a delightful neighbor. His personality as well as his bookstore have been an important part of the growth of our downtown vibrancy. We have cherished our friendship and partnership in creating a wonderful community in Sturgeon Bay." Former patron, Linda Cockburn writes that "there are many, many of us who are waiting for "Untitled" to be up and open again and for Katherine and Steven to be working side by side there. Many who are actively standing by Steven and his wonderful family." In that regard, four local Sturgeon Bay business owners have recently purchased a building and intend on operating a bookstore under a new name with the inventory provided by Steven while he is incarcerated. *See* Exhibit A14.

With that being said, and although neither alcohol nor illegal drugs present a problem for Mr. Link, he clearly has treatment needs. Sex offender treatment and continued supervision following incarceration will ensure that Mr. Link never commits this type offense again. A long period of supervision will allow the probation office to monitor Mr. Link's compliance with treatment as well as ensuring that he does not commit any further criminal conduct. In combination with these safeguards and the healthy influence of supportive family members and friends, a sentence of five years, followed by a significant term of supervised release

4

appropriately takes into account the nature of offense and the history and characteristics of Mr. Link.

**II.    The Applicable Guideline Range Does Not Properly Reflect Mr. Link's Conduct and Personal History.**

Mr. Link does not dispute the technical calculation of the guidelines, but as many judges across the country have recognized, the guidelines for child pornography crimes suffer from serious flaws. These flaws include a lack of an empirical basis for the guidelines and enhancements that do not properly identify actual aggravating characteristics.

As this Court has heard from counsel numerous times before, the guidleline enhancements as found in this case apply so frequently that they no longer fulfill their designed purpose, that of distinguishing between offenders. Counsel has not been alone in these arguments. *See, generally*, Troy Stabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines* (January 1, 2009), available at www.fd.org; *United States v. Dorvee*, 616 F.3d 174, 188 (2nd Cir. 2010)(Section 2G2.2 is "an eccentric Guideline of highly unusual provenance which, unless carefully applied, can easily generate unreasonable results."); *United States v. Diaz*, 720 F. Supp.2d 1039, 1046 (E.D. Wis. June 29, 2010)(Adelman, J.)("If even a first offender approaches the maximum based on the offense level alone, chapter four [of the Guidelines] becomes irrelevant, and a first- time offender is treated similarly to a recidivist. That is not what the Commission (or the Sentencing Reform Act) intended.").

Finally, the Sentencing Commission itself has weighed in on the issue. Fulfilling its statutory responsibility to advise Congress on sentencing policy (see 28 U.S.C. §§ 994,995(a)(20)), the Sentencing Commission recently submitted a comprehensive report to Congress titled "Federal Child Pornography Offenses"(hereinafter "2012 Report"). *See U.S.*

*Sent'g Comm'n, Federal Child Pornography Offenses* (Dec. 2012), *available at*

http://www.ussc.gov. The Sentencing Commission found that "the existing sentencing scheme in

non-production cases no longer adequately distinguishes among offenders based upon their

degree of culpability." *Id.*, Executive Summary at ii. Further, the Commission's report states:

> Non-production child pornography offenses have become almost exclusively Internet-enabled crimes… the typical offender's collection not only has grown in volume but also contains a wide variety of graphic sexual images (including images of very young victims), which are now readily available on the Internet. As a result, four of the six sentencing enhancements in §2G2.2- those relating to computer usage and the type and volume of images possessed by offenders, which together account for 13 offense levels – now apply to most offenders and, thus, fail to differentiate among offenders in terms of their culpability.

*Id.* at ii-iii.

The guideline used in this case, U.S.S.G. §2G2.2, is the "primary focus" of the

Commission's Report. 2012 Report, Executive Summary at v. The Commission notes that in

2010 the enhancement for images depicting pre-pubescent minors applied in 96.1 percent of the

cases, that the enhancement of sado-masochistic images applied in 74.2 percent of the cases, that

the enhancement for use of a computer applied in 96.2 percent of the cases, and that the number

of images table applied in 96.9 percent of the cases. *Id.* at xi. "Thus, sentencing enhancements

that originally were intended to provide additional proportional punishment for aggravating

conduct now routinely apply to the vast majority of offenders." *Id.*

All of the above enhancements apply here. When it is the nature of the crime itself to

include all of these characteristics, it no longer makes sense to consider these enhancements. If

those enhancements apply in the vast majority of cases, then the vast majority of criminal history

category I offenders, like Mr. Link, will then have a sentencing range near to or above the

statutory maximum. That is not logical, nor is it good sentencing policy. Every offender is not

the same, and every offender is not the worst. The statute itself allows for penalties between 5

6

and 20 years, yet the guideline suggests sentences only near the high end of that range for the

vast majority of defendants, like Mr. Link. Such a guideline is defective and should not be given

any deference.

The 2012 Report further notes that:

A variety of stakeholders in the federal criminal justice system, including the Department of Justice, the defense bar, and many in the federal judiciary, are critical of the current non-production penalty scheme. Although these stakeholders are not unanimous concerning the perceived flaws in the penalty scheme, many believe that it fails to adequately differentiate among offenders based upon their culpability and sexual dangerousness, needs to be updated to reflect recent changes in typical offense conduct associated with the revolution of computer and Internet technologies, and is too severe for some offenders.

*Id.*, Executive Summary at xii.

"The Commission concludes that the non-production child pornography sentencing

scheme should be revised" to account for technological changes in offense conduct, social

science research about offenders, and to "better promote the purposes of punishment by

accounting for the variations in offenders' culpability and sexual dangerousness." *Id.* at xvii. In

other words, even the Sentencing Committee believes §2G2.2 currently gets it wrong. The Court,

therefore, should afford the Guidelines no deference in this case.

## III.   Policy Considerations

### A.   Reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

The offense is indeed serious, so much so that Congress has seen fit to require a

mandatory minimum five year penalty. That statutory penalty structure in and of itself recognizes

the seriousness of the offense, and a sentence at the mandatory minimum by law meets

Congress' determination of seriousness. The converse, of course, is that the sentence should not

reflect the seriousness of any crime that Mr. Link did not commit. Mr. Link has not been

convicted or even remotely alleged to have been involved in any assaultive or hands on sex crime involving minors or adults for that matter. As the Court may know, Mr. Link's wife ran a daycare from their home. Throughout the entire investigation, law enforcement has not found any wrongdoing on Mr. Link's part in that regard, including no hands on offenses or unknown recording of any of the children Katherine Johnson cared for. In fact, in a letter addressed to the Court, Nicole Beck, a mother of one of the children Katherine cared for in the Link residence has expressed that "I was never concerned for my daughter. Steven was always kind to me and my daughter when he was there. I questioned my daughter after his charges became public and she said he was always nice to her and never did anything to upset her or make her feel uncomfortable." *See* Exhibit A9.

Further, in regards to the crime he has accepted responsibility for, Mr. Link did not encrypt any of his electronic equipment to avoid detection. He also certainly did not employ any sophisticated technology to protect any files he possessed. He was also not involved in any child pornography community that only traded files between themselves to avoid detection. Mr. Link's only means of obtaining child pornography was through peer to peer file sharing programs. Thus, the sentence here, should encompass the seriousness of this offense and not other offenses within the same overarching label of a sex offense, like a producer or hands on offender.

This legal intervention, Mr. Link's time in custody, and restrictions while out on bond has already had a significant impact on him. Although punishment is necessary, it is clear that treatment is as well. A sentence of five years is sufficient punishment for Mr. Link's first conviction at 37 years old, particularly in light of the fact that it is widely acknowledged that the sentencing guidelines for certain child pornography offenses are deeply flawed. As noted in *Gall v. United States* by the district court in that case, "a sentence of imprisonment may work to

promote not respect, but derision of the law, if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in the offense." *Gall v. United States*, 128 S. Ct. 586, 599 (2007). A within guideline sentence or 10 year sentence that will be recommended by the government in this case would promote such derision. Five years, a long sentence, correctly reflects the serious nature of this offense.

**B.      Afford adequate deterrence to criminal conduct.**

Adequate deterrence as to Mr. Link is achieved by the prosecution, felony conviction, required registration as sex offender, and first time incarceration of years, not mere months. Mr. Link completely understands the severity of his actions and is remorseful. Treatment is necessary, and it is highly likely that it will be effective in deterring Mr. Link from re-offending in the future.

As far as general deterrence, it is a more difficult concept to address, especially when it comes to child pornography. The fact is that the market for child pornography is depressingly world wide. Images and videos are widely available and free over the Internet. Even a max 20 year sentence  imposed by this Court would likely not have the desired general deterrent effect on such a market. That is not to say that Mr. Link should not receive any punishment, but five years is still a very long time and the sentencing policy of general deterrence is not nearly strong enough to support a sentence within the guideline range.

**C.      Protect the public from further crimes of the defendant; to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

To protect the public from Mr. Link essentially means stopping him from this type of behavior or worse in the future. As shown throughout Mr. Link's time out on supervised release, while this case was pending, he has been nothing but compliant with the restrictions placed on

9

him and was amenable to treatment. Certainly, he will need to be supervised after release to ensure further compliance with treatment and supervision rules. However, the community is the best place for Mr. Link to receive treatment that will keep him from re-offending. With the Court having the authority to sentence him to a lifetime of supervised release and by utilizing a lengthy term of supervision, it has the ability to provide the community with any further protection necessary after 5 years of incarceration.

Empirical research shows that few internet child pornography offenders commit contact offenses against children, and that internet offenders are less likely to recidivate or commit more serious contact offenses than other sex offenders. Michael Seto and his colleagues recently concluded that "online offenders who had no history of contact offenses almost never committed contact sexual offenses." Michael C. Seto et al., *Contact Sexual Offending by Men with Online Sexual Offenses*, 23 Sex. Abuse: J. of Research & Treatment 124, 137 (2011). *See also* Michael Seto, *Assessing the Risk Posed by Child Pornography Offenders* (2009) (paper prepared for G8 Global Symposium), http://www.iprc.unc.edu/G8/Seto_Position_Paper.pdf (reviewing studies, which show that child pornography offenders with no history of contact sex offenses present low risk of sexually abusing a child).

Richard Wollert, Ph.D, a clinical treatment provider and expert on the prediction of sexual recidivism, along with his colleagues, Jacqueline Waggoner, Ed.D, and Jason Smith, Psy.D. have added to the growing body of empirical research with a study specifically aimed at federal internet child pornography offenders. In a new edition of The Sex Offender, which is a multi-volume publication of the Civic Research Institute, Dr. Wollert and his colleagues catalog the litany of issues that have arisen with the child pornography guidelines and discuss the need for more empirical research to guide the Commission's decisions. *See* Richard Wollert, Ph.D., et

al., *The Sex Offender: Current Trends in Policy and Treatment Practice*, vol. VII, Ch. 2-1 – Ch. 2-18, (Civic Research Institute 2012). Dr. Wollert's greatest contribution, however, is in his analysis of published studies and the report of his own independent research with federal child pornography offenders on supervision.

In an analysis of nine of the quantified and published studies of child pornography offenders, Dr. Wollert and his colleagues conclude that the studies confirm "some important hypotheses about" child pornography offenders:

> Over time (from 1990 to 2010) and space (Switzerland, Canada, the United States, the United Kingdom, and other countries), the great majority of CPOs [child pornography offenders] have not had problems with sexual contact crimes prior to being convicted of a child pornography offense, and the great majority will not have post-conviction problems with the commission of sexual contact crimes. It also seems to be the case that CPOs, although more limited in their intimate social relations than others, are compliant with supervision and able to draw on substantial personal resources to benefit from treatment and rebuild their lives.

Wollert, *supra*, at 2-13.

Noting the absence of a well-designed study of a representative sample of federal child pornography offenders, Wollert and his colleagues undertook a study of seventy-two federal child pornography offenders on supervision and in treatment. Over an average span of four years, only two of the child pornography offenders had been arrested for another child pornography offense. "None of the CPOs was arrested on charges of child molestation however, and no one who had successfully completed supervision was charged with either a contact or noncontact sex offense." Wollert, *supra*, at 2-18.

Also noteworthy is the observation of Wollert and his colleagues regarding their experience in providing federally contracted treatment services to child pornography offenders:

> [C]onsistent with other findings, it has been our clinical experience that the great majority of offenders in the group generally do quite well in treatment, supervision, and post-supervision, and are able to conform their behavior to society's expectation. Their

11

responsivity to outpatient treatment, and thus the value of treatment, is reflected in the very low rate of contact sex offenses (0%) that were recorded in the study at hand and in another follow-up study that recruited CPOs from three different outpatient treatment programs. (Webb et al., 2007). Finally, having interacted on at least a weekly basis with most of our clients for years, our impression is that very few – perhaps somewhere between 1 and 15% – meet the diagnostic criteria for pedophilia (American Psychiatric Association, 2000). We therefore believe it is precipitous to claim that the use of child pornography may be taken as an indicator of pedophilia (Seto et al., 2006) in the absence of research on a representative sample of federal CPOs in which physiological and psychological testing are combined with true diagnostic assessment.

Wollert, *supra*, at 2-18.

When applying the empirical research to Mr. Link, there is nothing to suggest that he would not be able to rebuild his life and adjust his behavior to society's expectations as the above research has shown. In addition to the above research, other indicators also suggest that he will not become a recidivist. First, the strength and support of his family and friends is undeniable. This support will remain with him through incarceration and will be there for him when he is released. Further, Mr. Link, as mentioned above has been successful while on supervised released and is amenable to treatment. Mr. Link's employment background and success as a small business owner is also an indicator that he will not become a recidivist. *See* PSR at pg. 24, ¶5. These indicators, combined with the empirical evidence above, will assure that 5 years of incarceration and a lengthy term of supervised release will protect the public from any other detrimental conduct by Mr. Link.

### D. Avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

There is disparity in sentencing among child pornography defendants and a sentence of five years imprisonment is certainly disparate from that suggested by the guidelines. It is not disparate from the statutory sentencing range and it may not be that disparate from sentences that have been lately imposed across the nation. Many district court judges, recognizing that the child

pornography guidelines produce an unnecessarily harsh result, are sentencing defendants well below applicable guideline ranges. Christian Nolan, *Discretion Debate, attorneys note inconsistent sentences in child porn cases*, Connecticut Law Review Tribune (July 26, 2010). According to data collected by United States District Judge Gregory A. Presnell, more than half of all child pornography sentences imposed in the last year have been below guideline sentences, and the average reduction is 40 percent. *available at* http://sentencing.typepad.com/sentencing_law_and_policy/2010/06/fascinating-data-on-recent-trends-and-circuit-specifics-for-federal-child-porn-sentences.html.

The United States Sentencing Commission itself began investigating whether the child pornography guidelines are, in fact, too harsh. Several federal judges testified before the Commission that the current scheme in child pornography cases is too severe. *See* Felisa Cardina, *Federal judges argue for reduced sentences for child-porn convicts*, Denver Post (Nov. 29, 2009), *available at* http://www.denverpost.com/news/ci_13887009. United States District Judge John L. Kane testified before the Commission that "there is no empirical research referenced in the sentencing schemes to indicate whether long prison sentences will stop defendants from re-offending or help them overcome their compulsions by the time they get out of prison." *Id.* Federal defendants convicted of this offense, who were receiving sentences of 15 months in 1995, are now receiving sentences of 102 months. *Id.*

The Sentencing Commission's 2012 Report notes that by 2011, 62.8 percent of non-production offenders received below-range sentences for reasons other than substantial assistance. 2012 Report, Executive Summary at ii. The 2012 Report notes that "[t]hese sentencing data indicate that a growing number of courts believe that the current sentencing scheme in non-production offenses is overly severe for some offenders." *Id.* While there may be

13

disagreements upon just how broken §2G2.2 is and upon how and how much it should be corrected, the general fact remains that in 2011 courts did not follow the guidelines 62.8 percent of the time.

Notwithstanding the high rates of below guideline sentences and the widespread criticism of the child pornography guideline, sentences for child pornography are among the highest of all federal offenses. For 2013, the average term of imprisonment for a child pornography offense was 138 months. This was higher than the average sentence for robbery (80 months), arson (99 months), firearms (87 months), manslaughter (61 months), and assault (41 months). Only murder (266 months) and kidnapping/hostage taking (233 months) had higher average sentences. The average term of imprisonment for a child pornography offender in Criminal History Category I was 123 months – more than the 122 month average sentence given to hands on offenders convicted of sexual abuse crimes. Further, a child pornography offender in Criminal History Category I had an average sentence more than career offenders convicted of assault, and more than most of the average sentences given to Criminal History Category VI offenders, including those convicted of assault (54 months), robbery (94 months), drug trafficking (111 months), and firearms (115 months). *See, 2013 Sourcebook of Federal Sentencing Statistics*, tbl. 14.

## IV.      Conclusion

A sentence well below the guidelines is warranted in this instance. Mr. Link's personal history, lack of any criminal or substance abuse history, overall employment history, receptiveness and adjustment to pretrial supervision and counseling, and Mr. Link's educational and social background are mitigating factors. Moreover, the sentencing guidelines for child pornography are severely flawed. By the way of the plea agreement, the government will argue

Case 1:14-cr-00223-WCG   Filed 05/27/15   Page 14 of 64   Document 31

for no more than 10 years. However, the minimum mandatory sentence of 5 years is sufficient but not greater than necessary to meet all the purposes of sentencing Mr. Link. The difference between the parties' recommendation may appear slight when one looks at the overall considerations for sentencing- reflecting the seriousness of the offense, providing treatment, protection of the public, and deterrence, but such is not the case for Mr. Link's family and friends. The difference here is great.

It is five more years that Mrs. Johnson-Link will have to financially support herself and Mia on her own and five more years that Mia and Ronan will be without their father. Instead of Mia being 10 years old and in grade school, she will be 15 years old and a freshman in high school. Ronan, who is currently 16 years old, would be 26. For all the above reasons, the Court should sentence Mr. Link to five years (60 months) imprisonment followed by a significant period of supervised release and recommend a facility as close to Green Bay, Wisconsin as possible so that he can maintain contact with his family.

Dated at Green Bay, Wisconsin this 27th day of May 2015.

Respectfully submitted,

**/s/ Brian M. Maloney**
Brian M. Maloney,
WI Bar No. 1006605
Clarence F. Duchac, III
WI Bar No. 1096045
Hanaway Ross, S.C.
345 S. Jefferson Street
Green Bay, WI 54301
Telephone: 920-432-3381
Fax: 920-432-4037
Email: Brian@hanaway.com
Email: Clarence@hanaway.com

Counsel for Steven P. Link

## EXHIBIT "A"

**Letters in Support of Mr. Link:**

| | |
|---|---|
| **A1:** | **Ronan Link** |
| **A2:** | **Katherine Johnson-Link** |
| **A3:** | **Leonard Link** |
| **A4:** | **Lynne Link** |
| **A5:** | **Hillary Hays** |
| **A6:** | **Rev. Jerome Kuehn** |
| **A7:** | **Stephen Kastner** |
| **A8:** | **Angela M. Levens** |
| **A9:** | **Nicole Beck** |
| **A10:** | **Janelle M. Burr** |
| **A11:** | **Laurel S. Brooks** |
| **A12:** | **Dr. David V. Harsh** |
| **A13:** | **Ralph Valakata** |
| **A14:** | **Stephen Allen** |
| **A15:** | **Linda Cockburn** |
| **A16:** | **Kelly Avenson** |
| **A17:** | **Elliot Goettelman** |
| **A18:** | **Margaret Magle** |
| **A19:** | **Dr. Kurt Harris** |
| **A20:** | **Luke MacMillan** |
| **A21:** | **Nancy and William Skadden** |
| **A22:** | **Sherri Columbus** |
| **A23:** | **Thomas Alberts** |
| **A24:** | **Audra Fairchild** |
| **A25:** | **Guy Fortin, Esq.** |
| **A26:** | **Lisa K. Miller** |
| **A27:** | **Alan B. Kassien** |
| **A28:** | **Gabriel Fairchild** |
| **A29:** | **Kathleen Cascio** |
| **A30:** | **Bruce and Cheryl Bishop** |
| **A31:** | **Ryan Shaw** |
| **A32:** | **Anne Herring** |

From: Ronan Link

To: Honorable Judge

Regarding: Steven P. Link

Date: May 20th, 2015


Your Honor,

I am writing this letter in regards to my father, Steven P. Link, who is set for sentencing in your courtroom on June 1st, 2015.

My dad has always been here for me. When I was two years old, I was diagnosed with mild autism. He got me into an Early Autism Therapy program to help me with the learning problems I was having. I was in this program for about two and a half years. During that time therapists would come to my house and work with me and my mom and dad to help me recover from my autism. The head of the program said I was the most successful case of recovery they had ever seen. If my dad hadn't have entered me into that program, I most likely would still show mild to moderate signs of autism to this day.

Throughout my whole childhood, I never felt threatened by my dad, or thought he would hurt me in any way. He was a perfect dad. There were occasional arguments between him and my mother, but none that made me scared of him. I couldn't ask for a better dad.

I will say, however, that I did not spend much time with him as a child, mainly due to the fact that I preferred to live with my mother. With the events that have happened over the last few months, I strongly regret not spending as much time with my dad as I wish I did. If I could go back to my childhood and change one thing, it'd be to spend more time with him. I've learned that it really is important to spend time with



people you love, because you don't know how much time you have with them.

When I was about thirteen years old, my Mom and I made the decision to move up to Sturgeon Bay to be closer to my dad, as I wanted. He was so helpful with moving us up here. Every few weeks he'd drive for four hours to get to our house, take some boxes, and drive back up for another four hours all in the same day. If he hadn't have helped as much as he did, we wouldn't have ever been able to move from Southern Wisconsin up to here.

Once my mom and I had all of our stuff moved up here, we didn't have a place to stay until the next month, so my dad suggested that we stay in the basement of the store until we found a place to move into. When we stayed there, there was nothing weird in there, we felt safe, and it really was a great thing of him to let us stay there. We were there for a few days, until we moved into an apartment that was a few doors down from my dad's store, so I could easily walk over to the store. My dad saw me as being very responsible, so he let me run the store if he needed to run an errand.

In conclusion, I recognize that the law says he has to serve a mandatory minimum of five years. I politely ask you to strongly consider changing the minimum sentence so that he can spend some time under house arrest. I love my father so much. I need him to help me apply for colleges or trade schools when the time comes. My little sister and I will be very sad when he goes away. Please bring him home to us as soon as you can.

Sincerely,


Ronan Link

The Honorable William Greisbach,

I am writing to you on behalf of my family and to speak to you about my husband, Steven Link.

I could go on and on about the many favorable characteristics, the wonderful father he is, with examples from the last ten and a half years of what I have witnessed but I don't think you have any doubt that indeed, he is a good man. That is obvious as you have received many letters from friends and colleagues that point to his true nature as an upstanding gentleman dedicated to his family and his community.
I feel that my choice to marry him last week shows how very much I support him, that I trust and love him and intend to work through this issue as a family.

I must say that though I am grateful the federal prosecutor is only requesting 10 years, I truly feel if he knew the real Steven he would see that he is not a threat and be requesting less time, because he is a wise and compassionate man , I can see that.

Unfortunately I feel it is a disservice to have a mandatory minimum of five years prison in this case because I feel that as a family we can honestly work through and get to the root cause of the situation we find ourselves in. I don't feel that mandatory minimums benefit society , true the newspaper reader might read that this predator has been sentenced to a long time and they might 'feel' safer momentarily but the reality is if these people are just brushed away....and under the rug with no real rehabilitation , what is to stop them from escalating or from future offences when they return to society if the problems are never addressed on an unconscious level.

It is difficult, I know, because it is an unsavory topic and no one wants to be seen as advocating for predators, but I really believe that these cases should be dealt with on a case by case basis, not a strict guideline where the Judge is not allowed to use his intuition expertise and knowledge in the sentencing order. Clearly a conversation needs to be had as to why someone would have these images and for what are they using them and are they a threat to children in fact, or are they just collecting abhorrent images.

I have worked through addiction myself and I can say is that while a person is in an addictive binge they are not showing their true nature, but the moment that the addict admits to having a problem That is the time to start healing. Now that the bandage has been ripped off so to speak , it is the time to start the healing process. If we have to wait 5 to 10 years I fear that the window of opportunity will have closed or in any case the healing will not be as profound as it could have been if openly addressed properly as a family.

The intense introspection and healing that has resulted from our current situation is almost indescribable, as it is so vast. The blessings that have rained down, and the support from our community and loved ones has been amazing and quite humbling- I find it to be a testament to the measure of my husband's character- it has given us the opportunity to receive the gift of feeling the unconditional love which surrounds all of us, if we choose to let it in.

I am a very spiritual woman and I have been praying for years that Steven would experience our creators love, and let that love into his heart. I suppose I could say to be careful what you pray

EXHIBIT
A2

for, but this whole situation has uncovered that love. I want you to understand that we are very grateful, in a lot of ways, to have had the opportunity to overcome a struggle such as this. I guess, in a way, our family mission has been found. By uncovering the divine spark that lives in all of our hearts and by living our lives gracefully and in viewing our world from that perspective, we can assist all of humanity to uncover that love, which is the very foundation of life.

Your honor I ask that you give Steven the most lenient sentence as possible, he not only supports two families but he is also an active member of society. If there is any way to find the compassion to give him a suspended sentence or to order partial house arrest I ask that you consider it so my family can work through these issues together. If in fact you do have to give him the mandatory minimum of five years and I ask that you order him to self-surrender to FCI Oxford. This will not only save the money of housing and transporting him but it will also ensure that he stays close to home. We are a very tight family and will be visiting him often I feel that this facility will be least traumatic for the children.

Thank you so much for your consideration
Katherine Link



EXHIBIT
A3

My son Steven — he is quite a wonderful son. Born to the greatest grandparents: Lee and Mildred Holloway of Pittfield, Illinois (200 miles south of our home).

There were many get-togethers during the years, and always at Thanksgiving and Christmas. However, it was a week- or two-week vacation with grandfather Lee that Steven loved. Lee was a Farm Service Sales Rep and he took Steven to work with him in his FS pickup truck. They both enjoyed it.

Lee loved all children so much. For Steven it was eye-opening. His grandmother, Sudie Link, lived in Lyndon, Illinois, ten miles west of us. She, too, loved her children and grandchildren. She had lost her husband in the service in World War II.

After she retired, she took bus trips across the country. She took Steven on several of these. They both had much fun together.

When home, Steven played with his two older brothers. He would also have us take him to the library frequently or to the two bookstores.

He was also always reading National Geographics at grandfather Lee's (as he had Geographics back to the 60's).

While in school, Steven took a job with the Sterling Park District doing maintenance and custodial.

He worked at this job from age 15 until after he graduated from high school. He worked at the Park District with a retired Sterling Police officer. They were good friends in the allied work they did.

Steven moved on to take a job on a motorized paper route. He did this for several years before he moved to Rockford and then to Madison, WI. He worked in a bookstore and met Hilary. They had a child, Ronin. Steven then took a job with ~~Charter~~ Communications as an over-the-road field rep, this took him across Wisconsin. After 8 years at charter the company downsized and Steven was laid-off.

Around this time Steven had met Kathryn and he relocated to Sturgeon Bay with her.

Over the years Steven had accumulated books. When he was living at home in Sterling he would annually go to the library when they had their closeout sale. He had a large collection by this method. The owner of a vacant building in Sturgeon Bay gave him the chance to open his bookstore. He operated as such for years.

During these years he was on the road a lot. Primarily this was to acquire new stock for sale. He acquired a lot through closings of schools and libraries. He also amazed me with the number of dealers and book-sellers he had come to know. He also spent a lot of time visiting his son Ronin who was still in Madison. They were and still are very close.

Steven has always had strong family ties. Now in their formative years, his two children need those same ties plus Steven's presence.

Steven's father,

Leonard Kirk

INCLUDED IS THIS WRITE-UP IN DOOR COUNTY USA WHERE THERE WERE OTHER SIMILAR NEWSPAPER ARTICLES

P.S. PROMANATE IN STEVEN'S STORE WAS GRANDFATHER LEE'S FARM SERVICE ADVERTISING PENCILS, PENS, MATCHES. STEVEN WAS MOST PROUD OF THIS.



Steven is my 3rd son. He has always had a good sense of humor & has made me laugh - its so much fun having him around. When the whole family played trivial pursuit - he amazed his two older brothers with his knowledge & would always win. Dan is the next brother - has three kids & is head of transportation in Geneso, Ill. Jeff is the oldest with 3 kids & is CFO for an insurance company in Iowa - all of my sons have been great fathers and did well in life. The two older boys were into sports while Steven loved books, it was his dream to have his own store & he did very well at it, it was his knowledge of what people liked, knowledge of antiques, & his personality that made his store a success.

We have always been a close family & since I've started losing my family, Steven's grandparents, aunt & uncle - family has become that more important. Steven has helped me thru some tough times - he doesn't have to say much - just be there.

Mia & Ronan mean the world to him. We try to have Ronan spend the summers with his cousins in Ill. & Iowa. Steven's dad isn't well & I have to work, so we weren't able to get up to Sturgeon Bay as much as we would like. Last summer as a surprise, his two brothers with their families, my husband and I were able to go up for a visit. It was the best time!

As a mother I know I'm very biased - but I would want Steven as a friend even if I didn't know him very well! He is a very loving, caring & sensitive person.

Lynne Link

May 21, 2015

Dear Honorable Judge Greisbach,

I am writing to you at this time to share with you true and heartfelt facts regarding my son Ronan's father, Steven P. Link. I do acknowledge and understand the crime of which Steven has been accused, and I am aware that he has pled guilty to the charge of receiving child pornography.

I must tell you, however, that in all of my years of knowing Steven, I have never once felt that he was a danger to our son. Steven has always adored Ronan, and although they lived apart for some time, Steven remained vitally involved in his son's life.

I must also assure you, your Honor, that I am not the sort of woman who would deceive people in order to protect a man. To be honest, as a young adult, I experienced a significant amount of male-related trauma which, if anything, has caused me to be hyper-critical and unforgiving where men are concerned. Thus when I speak to you about Steven, I am doing so with absolute openness and honesty.

When I met Steven Link, he was 12 years younger than me - just 19 years old. Whereas he was just beginning his adult life, I had already experienced many years of my own. In short, even if only due to our difference in ages, Steven and I were highly incompatible. We argued constantly. We tried not do so in front of our young son. Even still, despite the tensions in the household, I always understood Steven to be an exemplary father, and I never once feared for our son when he was in his father's company.

Additionally, possibly due to my earlier traumatic experiences, over the years I'd developed a keen awareness of any proximal dangers. Some might call this a "woman's intuition". Whatever its name, the fact of the matter is that if anything or anyone in Ronan's vicinity had ever posed a threat to him – I would have known it.

Furthermore, because of the contentious relationship between Steven and myself, it should be evident that if anyone in Steven's life were going to "throw him under the bus" so to speak - it would be me. Yet to you say I could never do



EXHIBIT
AS

that. For while Steven and I disagreed on literally everything - except the fact that we both love our son - I would never deny his excellence as a father.

It is very difficult for me to put into words the confusion and shock I felt when I heard the news of Steven's arrest. In all that I have known and understood about Steven, the charge that he could be guilty of receiving child pornography simply did not fit in my Universe. I searched my memories for anything that would have signaled such a propensity in him, and I really could find nothing. In my mind, the only possible explanation could be related to his - one might say - compulsion to illegally download music and movies, and also to his most obvious years-long tendency to collect/hoard various items to perfection and past the point of all reason - in his case, mostly books. I suspect that this inclination could well be the underlying motivation that led to Steven receiving the unspeakably disturbing subject matter in question.

So with everything in me, and I would swear this on a stack of Bibles, it is my belief that Steven's receipt of these dreadful images was and is, most likely and very simply, the result of his predilection to complete collections - meaning that the pictures themselves were in no way gratifying to Steven.

Prior to Steven's arrest, he was considered an exceptional businessman with an impeccable reputation. Indeed, if you'd ever had the opportunity to visit Steven's bookstore, I think you would have been quite impressed. This was a store not only for books. There were also antique toys, dollhouses, calendars and other interesting trinkets featured throughout. The store was a haven for local intellectuals and artists. The aura within the store was one of warmth and comfort. Steven was trusted and well-liked by all who knew him.

The final facet worthy of mention is that of the son I share with Steven. Today Ronan is a 16 year-old young man who is known for his clever, original sense of humor, and for his natural, easy-going confidence. He easily cultivates friendships and relates to his school classmates in an authentically friendly, self-assured manner. He is also very intelligent and he excels in trade classes related to carpentry, electrical wiring, laser engraving, and the like. Incredibly, he never frets or worries about anything, and he always has a positive approach to life. Ronan is a boy who is visibly happy and well-adjusted. He is not a child who demonstrates any evidence of trauma; nor does he manifest any maladjusted behaviors. Surely this is proof that he is the product of two loving, reliable parents.

The other hugely important factor is that Steven's children - both Ronan and Ronan's five year-old half sister, Mia, dearly need their father. Steven's daughter is a bright, magical, wise child who loves to dance like a ballerina and who is always joyful and kind. She loves her father as any cherished child would. Without him, there will be a void in her life that no one else could ever fill, and I fear for how this void will adversely shape the young woman she becomes.

As for Ronan, he is heading into his final two years of high school. Who will provide him with much-needed fatherly structure and guidance? Who will drive him to visit colleges and trade schools he might wish to attend? Who will be of help to me as a single parent when I am in need of it?

For not only has Steven been a good businessman, father, son and friend - he has also been of extraordinary assistance to me. I have been disabled and on disability benefits for a number of years. Steven has consistently helped me by repairing household items when they break. He also takes me to the grocery store whenever I need to go there (because I have no car and do not drive). Twice he's helped me to move from one apartment to another. Steven has also faithfully driven me to and from the bus station in Green Bay once per month so that I may travel four hours south to visit with my 26 year-old autistic son.

Certainly Steven doesn't have to help me. He doesn't have to do anything for me at all - and yet, as proof of his fine character, he is always available to make sure that Ronan and I have everything we need. So despite the fact that Steven and I have not been in a romantic relationship for ten years or more, unusual though this may be, he has truly become my best friend.

In fact, three years ago Steven helped finance & move Ronan and I to Sturgeon Bay from Spring Green, Wisconsin, a move that has given Ronan the immeasurable benefit of having his dad daily in his life.

Your Honor, I humbly ask that for one moment you might look upon Steven Link as a man who has been a great father, son, and friend to many. A man who accomplished his life's dream of owning and operating a bookstore while still in his thirties. Of course the prosecution in this case will not speak of Steven's many admirable accomplishments or traits. They will tell you only that he is a bad man, despite a lifetime of evidence to the contrary.

Therefore I beg of you to offer Steven the lightest sentence possible. Perhaps, in your mercy, you might even consider that the bulk of his sentence be served under house arrest. Steven has, after all, fully adhered to every rule and regulation that the court set for him during these past few months. He has proven that he can be fully trusted to obey all court orders.

If, however, your hands are tied because of the mandatory minimum sentencing requirement of 5 years, then I beg that you will sentence him to just that - the minimum.

I also ask that he remain in close proximity to his home. As I understand it, the best way to assure this would be to order a self surrender into FCI Oxford. His family will be visiting him often and this facility seems to be the nearest and most suitable environment for the children to see their father.

Please, your Honor, for all of these reasons, I beg for your mercy in sentencing Steven Link.

Respectfully Yours,


Hillary A. Hays



# The Episcopal Church of Christ the King and Holy Nativity

Sturgeon Bay, WI 54235

Vicar: ████████████████        Website: cckhn.org        Secretary: ██████████

May 22, 2015

The Honorable William Griesbach
United States District Court for the Eastern District of Wisconsin
125 South Jefferson Street, Room 102
Green Bay, Wisconsin 54301-4541

Dear Judge Griesbach:

    I am writing you in reference to the case of Mr. Steven Link. I was recently honored to officiate at the wedding of Mr. Link and Ms. Katherine Johnson. While I did not know Mr. Link prior to being asked to perform their marriage, I have come to know Steven rather well during premarital counseling sessions. The Steven Link that I have come to know is an intelligent, articulate and caring person. Throughout our conversations it became apparent to me that Steven's primary concern was not for himself, but for the well being of his wife and children. After talking with Steven and Katherine I have come to strongly believe that in no way could Steven be considered a threat to children, or anyone else in the community. I believe that this is shown by the fact that he has been allowed to stay at home with his wife and young daughter. In talking with people who have known Steven well, and for far longer that I have, I developed a picture of Steven as a man who is respected by many in the community. Steven is a business owner who has been forced to close his business due to the accusations against him. Steven is a person who is determined to learn from the problems that are facing him, and to use this knowledge to be a better person. I would urge the court to consider the real person who Steven is in determining his sentence. It is my opinion that a minimum sentence, served under supervised probation, would be appropriate in this case. In closing I have had occasion to be in court an have heard the words spoken, "God save this honorable court." Remembering these words, I would respectfully remind the court of these other words, spoken by Our Lord on the occasion of his sermon on the mount, "Blessed are the merciful for they shall obtain mercy."

    Sincerely,

    *Jerome F. Kuehn*

    The Rev. Jerome F. Kuehn

**EXHIBIT**
**Ab**

Stephen Kastner
████████████████████
Sturgeon Bay, WI 54235

Hanaway Ross Law Firm
Attn: Atty. Clarence Duchac
clarence@hanaway.com
345 S. Jefferson St.
Green Bay, WI 54301

May 19, 2015

Honorable Judge,

It is with a heavy heart that I write requesting clemency and consideration in regards to my friend and
associate Steven P. Link, set for sentencing June 1, 2015. I would like to enter a statement regarding
Steven's character and kindness, his community spirit and his nature as the loving and attentive father
of two children. He is an extremely intelligent, diligent, hardworking and creative individual and his loss
to this community has been dire.

These are my personal opinions and are in no way meant to censure or criticize systemic attempts to
prevent crime and deter criminals from further harming society. However, I do not believe that Steven
Link is a criminal nor that he poses a threat to this community despite the findings of the court. I believe
that any time spent in prison will merely compound the loss to this community and impose a far greater
and unintended punishment on his wife and children.

This is a case in which all of the principles of restorative justice would serve society in a much greater
fashion than burdening the state with his incarceration. The most severe and effective form of
punishment would entail:

Encountering and imposing a dialogue between Steven and his victims, including any and all community
members who wish to meet and discuss the crime and its aftermath in a constructive manner. Steven
may have obtained imagery deemed harmful or illegal but he is not addicted to nor driven to obtain
child pornography, although there are many individuals who are. I believe that Mr. Link's experience can
be utilized as a benefit, and applied as mentor and counselor to people with much more severe
problems.

I believe that he could be made to make amends in this manner by taking an active role in working to
repair any of the harm he may have caused.

Rather than being consigned to prison, I would prefer to see him undergo reintegration to the city he
and his family reside in. He has been publically scorned and humiliated, humbled and broken by the loss
of his business, his reputation and his freedom. The best way to resolve this is to return him to that
community charged with spending the next several years working to become a whole, contributing

EXHIBIT
A7

member of that society once again. That would indeed be much harder than having him swept away and forgotten about, only to return years later to whatever remains.

I think it would be much more challenging to mandate his inclusion back into the very society he offended. Thus, he would provide opportunities for victims to resolve any unanswered concerns and for him to account directly to this society by way of compulsive community service for any harm done.

Measuring that harm is another concern. Mr. Link was not producing child pornography. He may have acquired a limited number of images either by intent or by accident. The invasion of privacy as described by the use of hidden cameras is offensive, but does not seem to be worthy of a 5-year prison sentence. I believe that it would be sufficient to have him make amends through community service while removing the burden imposed upon his children through the loss of their father.

I do not pretend to be in any way competent to speak about administration of the law. But I do know, love and respect Steven Link having been a friend and neighbor for several years here in Sturgeon Bay. He is not a criminal and any years he spends in prison would be a punishment imposed on everyone who knows and cares about him.

Sincerely,

Stephen Kastner

Honorable Judge Griesbach,

I am writing you today on behalf of Steven Link. I am asking that you find yourself in a position to offer leniency to Steven, not only for himself but his family as well. I honestly feel that there has been a miscarriage of justice in this case.

I have known Steven for approximately six and a half years. I have always known him to be mild mannered and considerate. He and Katherine have watched my children and my grandson on numerous occasions and NEVER did I once perceive him to be "that person". I am the mother of seven, my children are my life; I have encountered people who have made me feel as though I needed to protect my children. Steven is not and never has made me feel this way. I have watched him with he and Katherine's daughter Mia from the time she was born, and his son Ronan, he is great with his children and they love him dearly. I know that technology has created an evolution moving faster than most of us can keep up and there were many hands that had Steven's technology available to them.

I understand that you must make a ruling and that there are guidelines that you must follow in doing so, but I am asking you for the sake of this family to find it in your heart to be a lenient as possible. This is a good man with a very amazing family. I have watched, since the inception of this situation Steven gain even more strength and faith in his Creator. He has utilized this situation to find the grace in it all and expand his spirituality. He has not become angry or bitter, he has used this situation to create growth and make himself a better man, father and husband. With that I ask you; is this the behavior of a common criminal or pedophile? I don't think so.

I thank you for your time and consideration.

Sincerely,

Angela M. Levens

EXHIBIT
A8

To Whom It May Concern:

I have been friends with Katherine Johnson for about 4 years. I utilized Katherine's Johnson's babysitting services for my daughter Arielle from 2012-2014. I also utilized her hair services during that time as well. I occasionally saw Stephen Link at the house in the morning when I dropped off my daughter. If I did see him most of the time he was still sleeping. Occasionally he would be home when I picked her up but that was rare. During this time I was never concerned about the safety of my daughter. Stephen was always kind to me and my daughter when he was there. I questioned my daughter after his charges became public and she said he was always nice to her and never did anything to upset her or make her feel uncomfortable.

I do not feel Stephen Link is a threat to the community. Feel free to call with any further questions

Sincerely,

Nicole Beck

~~███████████████~~
Sturgeon Bay, WI 54235

~~████████████~~

**EXHIBIT**
A9

May 20, 2015

Honorable Judge Griesbach

I want to share with you the experience I have had getting to know Steven Link. The family Steven has created Katherine, Ronan, Mia, Hillary and the many friends that he has collected along the way are extremely supportive of him. The Saying, "You get what you put into it" is true when it comes to Steven. The Link family's friends are loving and understanding and are doing so much to support the family at this time. Steven is an individual that posses all of the above characteristics. By seeing how much their friends have supported their family at this time shows me how much Steven has put into his community by being a friend to many along with his business in Sturgeon Bay. The family's dynamic is exceptional because of the positive love and understanding Steven gives his wife, children and also his son's mother Hillary who is also a very important part of their family. I personally have been a victim and have known victims of sexual predators. I do not see any signs of danger or instability with the people who are involved in Steven's life. When it comes to the Judgment of Steven Link please note that I have gotten to know Steven and I do not believe he is a danger to his family and community. I look at his wife, daughter and son and I can't imagine his wife and children growing up without him around. Also I was wondering why Kory Murphy received two and one half years, and Steven could possible receive ten. If there is a way you can make an exception for Steven so he is involved in his community and family before his children grow up. If the mandatory minimum is required of 5 years, I please ask you to make it the five years and not anymore, because Mia is five years old and needs her father along with Ronan and Katherine. Katherine and Steven love each other unconditionally; Katherine will be there to support her husband through this time. Steven supports his family greatly especially his disabled mother. And it will affect his family greatly when he is serving time and not be able to be there for his family. Thank you so much for your time.


Janell M. Burr

EXHIBIT
A10

**LAUREL S. BROOKS**

~~████████████~~

Sturgeon Bay WI 54235

May 19, 2015

The Honorable William C. Griesbach
Jefferson Court Building
125 S. Jefferson Street, Room 102
Green Bay, WI 54301-4541

Dear Judge Griesbach,

I am writing in the interest of Steven P. Link, who faces sentencing on June 1, 2015, in
Case No. 14-CR-223. I ask that Mr. Link be sentenced to an appropriate period of
probation.

I ask for probation because it is the least punitive outcome for Mr. Link and his family
and, ultimately, for our community. The facts of the case cannot be known because the
case will not be tried. Of course, we all suffered a universal shock wave when Mr. Link
was first arrested; however, in the absence of any information to the contrary, we have all
been left to resolve the matter in our own ways. I have to base my regard for Mr. Link on
what I know from my own experience of him.

I first knew Steven through his book store, which my husband and I frequented, and also
through association with mutual friends. In this way, we have become friends, as
well. A small town notices new presences and voices in its midst, and a bookstore gave
Steven a somewhat higher profile. Bookstores are treasured by readers and thinkers and
we were lucky to have one when so many communities, large and small, were losing
theirs. We were grateful to Mr. Link for taking a chance on us. In the course of our
association, I have found Steven to be thoughtful, witty, civic-minded, and kind. We were
better for his presence.

Steven's home has needed repair and maintenance, a condition he has worked on
independently as time permitted. During the period since his plea, however, he has
worked seemingly tirelessly, accomplishing carpentry tasks that will allow his wife and
children to live comfortably in his absence. He is also working very hard to provide a
livelihood for them and loving friends have lent unsolicited, unexpected, and generous
assistance.



EXHIBIT
A11

I have not been damaged by my association with Steven, nor have I heard anyone in the community say that they have been. I think this is significant, because a shocking accusation frequently opens the door to gossip and spiteful commentary from people who are so disposed. I have heard no one express such feelings or observations. While I have heard no one say they have been damaged by Steven, if he is removed from our midst, his family will be damaged and, by extension, so will our community.

Please sentence Steven to probation. He has been humiliated and will continue to be the subject of greater scrutiny, never knowing for sure if what he perceives is actually the contempt he imagines. He will have to live with doubt and, perhaps, shame, but he will be able to care for his family and participate in the life of the community. We can mutually benefit. Please.

This cannot be easy for you, either. Thank you for your thoughtful consideration.

Sincerely,

Laurel S. Brooks



**Dr. David V. Harsh**
**United Methodist Minister**
████████████████████
**Sturgeon Bay, WI 54235-9061**
████████████
████████████████

DATE: May 16, 2015

RE: Steven Link

TO: The Honorable Judge Griesbach

It has been difficult to watch the unfolding news concerning Steven Link, much of it difficult to comprehend.

Allow me to share personal experiences of Mr. Link that demonstrate a different image. He worked extensively with me in terms of antiquarian books from his book store that illustrated an extensive knowledge of the subject. More importantly, his financial dealing with me concerning valuable volumes was accomplished with significant honesty and integrity. Fairness would be the key work in his business relationships.

Mr. Link took seriously his role in the community. He related with generosity with causes that enhanced the community. A few that come to mind include Habitant for Humanity, theater productions and scholarships.

On one occasion, while working with Mr. Link on historic books, a woman came into the store to personally thank him for his contribution to her agency. During the conversation, he encouraged her to seek a higher financial commitment from him next year.

It would be my hope that there could be some way to maintain his positive relationship and care for this community in the years ahead.

*David Harsh*



**EXHIBIT**
**A12**



**Ralph Valatka**

~~_____~~

Sturgeon Bay, WI 54235

~~_____~~

May 5, 2015

Hon. William C. Griesbach
c/o Atty Clarence F. Duchac III
Hanaway Ross Law Firm
345 S. Jefferson Street
Green Bay, WI 54301

Dear Honorable Judge Griesbach,

I write to implore your leniency for the June 1st sentencing of Steven P. Link. I do so on behalf of Katherine Johnson and their daughter, Mia Johnson-Link. I was close friends with Ms. Johnson's deceased father, Thomas, and have know her for over 20 years.

Mandatory sentencing, eliminating a judge's very judgement, ofttimes punishes not just the offender, but harms the offender's family as well. Because of this, I request that you consider the <u>minimum</u> possible sentence for Mr. Link.

Katherine has made it very clear to me that she dearly loves Steven and that his incarceration will cause deep harships. She firmly believes that her family's future is improved by his close involvement with them. Families *are* generally stronger with a father's presence. Katherine feels that she and Mia will be "punished," too, the longer Steven is incarcerated.

If it is within your power to use house arrest or probation as all or part of Steven's sentencing, please consider them. I do not believe that Mr. Link poses any flight risk. In fact, he actively contributed service to our community, including service as a board member of a local nonprofit organization.

Thank you for your consideration of this request.

Yours truly,

Ralph Valatka

Ralph Valatka

EXHIBIT

A13

May 10, 2015

Dear Judge Griesbach:

Steven Link is one of the best friends I've ever had in my 67 years. I met him a few years ago when he opened his bookstore, which was a wonderful place to visit, chat, and find a wide variety of books to browse or purchase. Steven is an intelligent, polite, caring, and generous person who goes out of his way to help others ... exactly what most of us are looking for in a friend. It was a pleasure to be a regular patron of his business.

In 2013 I recruited Steven to serve on the board of directors of Third Avenue Playhouse (TAP) in downtown Sturgeon Bay. This theater is being reinvented as a premier venue for locally produced professional stage productions, and the board and staff have faced many challenges and growing pains. During his tenure on the board, Steven served on the Marketing Committee, Finance Committee, and was an active, engaged, and hard-working director. He was also a generous sponsor of a few productions we staged. His business acumen and marketing and sales background were an asset to TAP, a 501c3 community organization. He also worked vigilantly beside staff in set construction and theater renovation projects.

I have observed that Steven is also an excellent family man, always putting the feelings and needs of his family first. He has been a good role model to both his son Ronan and daughter Mia, and a wonderful life partner to Katherine. Family gatherings to which I have been invited have always been opportunities to share in their joy and friendship.

As a retired teacher, corporate executive, and small business owner, I've always enjoyed challenges. This, combined with my keen desire to help this family, have inspired me to run Steven's book business while he is away. To this end, I have purchased a building such that the bookstore can relocate and prosper under a new name and management. Four local business people are committed to opening this store in June. Its tradition of serving the community with a wealth of used and rare books will be continued. We expect the community to embrace this effort based on local feedback over the past several months. In addition, this bookstore had outstanding financial results from book sales, which my partners and I have closely scrutinized in making this decision.

In summary, I stand behind Steven as a person of impeccable character and honesty.

Sincerely yours,


Stephen C. Allen
~~███████~~
Sturgeon Bay, WI
~~███████████~~



**Clarence Duchac, III**

| | |
|---|---|
| **From:** | Linda Cockburn <██████████████████> |
| **Sent:** | Friday, May 15, 2015 2:45 PM |
| **To:** | Clarence Duchac, III |
| **Subject:** | Stephen Link |

Dear Attorney Clarence Duchac,III,

I am a 61 year old woman who lives in Sturgeon Bay a few blocks from where Stephen had his "Untitled Bookstore" business. I have gotten to know Stephen firstly through antique books I had and later through many hours of discussions ranging from our City's issues, philosophical concepts, his children and family...the A-Z of topics.
Stephen is a good person.
I have no understanding of the technology that brought about this case,none, but there is a big hole in my heart and the hearts of many that Stephen is being removed from us and our vibrant community.

His daughter,Mia, his soon to be spouse Katherine, his son,Rowan, will be put in such a harsh space with his removal from there lives, is there any way that compassion can be shown to shorten his sentence and let him be with his family and work, even if it's under house arrest?

There are many,many of us who are waiting for "Untitled" to be up and open again and for Katherine and Stephen to be working side-by-side there. Many who are actively standing by Stephen and his wonderful family.

There isn't a flight risk, there isn't any negative home situation, both of his children are wonderful, a home full of LOVE.

Incarceration is costly, there isn't any violence nor drugs in Stephens case, couldn't consideration be made to help keep him with his family and in the community that loves him?

He is a sincere,intelligent and gentle person who could be a benefit to society, counsel him to be sure there isn't a future issue, do what would be beneficial to us all by not putting/keeping him in jail.

Thank-you for listening and your consideration.

With the utmost respect and sincerity,

Linda Cockburn
██████████████
Sturgeon Bay, WI 54235


EXHIBIT
A15

To Whom It May Concern:

I would like to share my thoughts about Steven Link's character.

Steven has been a good friend and great business colleague of mine for the past 4.5 years. His willingness to help others was a godsend to me (and so many others in our community) as I opened my business next door and the 4+ that followed. He was always willing to help a neighbor in need even if it took him away from his own expansion projects before, during or after hours. You knew with him next door you always had an extra set of hands if needed.

Steven helped grow our community by opening "Untitled" used and rare books; creating an atmosphere that felt as if you were walking into one of stories that filled one of those fabulous rare books in his shop. The locals loved it and the tourist flocked to it. Steven also gave back to our community in ways many didn't even know. He was on the Board of Directors of Third Avenue Playhouse, an integral part of our Third Avenue Business Association, took part in the Festival of Trees at the Maritime Museum, Steel Bridge Songfest, Darksongs Songfest, and Love on Holiday Songfest.

His love for his community was strong but his love for his family was even stronger. Katherine, Mia, Ronan and even his ex-wife were so very special to him. He moved his ex-wife and son up from IL a few years ago, (moving and even finding her an apartment) so he could be part of his son's daily life. Many days in the summer you could find Ronan behind the counter at the bookstore helping his dad out. Katherine and Mia stopped in at least once if not twice a day to give hugs and say hi. It truly was a family atmosphere and you could feel the love between all of them when you walked into the shop and they were all there hanging with one another.

Steven is truly an asset to our community, a great friend, wonderful partner and above all a loving father.


Thank you for your time,


Kelly Avenson
Owner – Greco Gallery & Avenson Photography
<span style="background:black">████████████</span>
Sturgeon Bay, Wi 54235
<span style="background:black">████████████</span>



EXHIBIT
A16

To whom it may concern,

I am writing to you to express my views of Mr. Steven Link's character.

I have known Steven for several years. He has always been an extremely caring and helpful man for as long as I have known him. My wife and I own and run a business next to his wonderful bookstore in downtown Sturgeon Bay. Steven has always been a delightful neighbor. His personality as well as his bookstore have been an important part to the growth of our downtown vibrancy. We have always cherished our friendship and partnership in creating a wonderful community in Sturgeon Bay.

Steven also is a wonderful father and husband. I wish I would see more parents cherish their children as Steven cherishes his.

Thank you for your time.

Sincerely,

Elliot Goettelman
~~███████████.~~
Sturgeon Bay, WI    54235
~~███████████~~

**EXHIBIT**
**A 17**

To Whom it may concern,

I am writing this letter in support for a man I have the pleasure of making friends with. I first met Steven Link many years ago because of a love of books. He struck me as a man who was passionate about what he loved, and a caring, and giving person.

Several years later, I met him again because of an enjoyment and appreciation of music. He was still the man I had met years earlier, but know he was a business owner and a father.

I could say how much he impacted my life, or how he changed my values, or a number of other things that would raise him to a man of highest character, but unfortunately I can't say that because, also unfortunately, my times with him were not as often as I wished they could be. What I can say is this, a child sees the world with innocent and open eyes. You know when a child is unhappy, or upset, or afraid. When I watched Steven with his daughter Mia, I saw love and devotion and trust in her big eyes. I watched them play together, dance, share in a joint love of music and books, and I saw the trusting rest of the quiet times between father and child. This love and devotion to his children and his wife speaks volumes for a man.

Due to my past, I do not trust many people and I get vibes off of people that tell me to either back away, watch out for, or stay and make friends. I had no bad vibes and went with my intuition. I feel no danger, no uncomfortable gut instinct, just a friend who deserves a second chance at life. A chance to restart his life as a husband and family man. A chance to watch his children grow and develop into the wonderful people I know they can be.

Please, give him that chance to start again and enhance the world around him with the devotion, appreciation, and kindness he has shown in the years that I have known him.

Margaret Magle

Sturgeon Bay, WI 54235

EXHIBIT
A18

Honorable Judge Griesbach                    May 15, 2015

Dear Judge Griesbach

My name is Dr. Kurt Harris. I am writing this letter to the court in support of Mr.
Steven Link on the occasion of his hearing for sentencing.

I humbly beg the court to apply all permissible leniency and mercy in sentencing Mr.
Link.

I first made Steven's acquaintance four years ago as a patron of his used bookstore –
Untitled Used and Rare Books - in Sturgeon Bay. I am a specialist physician who
practiced for over 17 years in Door County and am a bibliophile and avid reader.
Steven and I bought conducted trade in used and rare books frequently from 2011
until his store closed last summer. I also used his services as a broker and appraiser
of rare and collectible books.
In my business dealings with Steven I always found him to be honest, professional in
demeanor and a man of the highest ethics.

Over time I began to appreciate that Steven had a sharp mind and even sharper wit.
He and I became friends and would frequently have conversations about all manner
of topics over coffee at Untitled. This coffee, along with comfortable chairs to read,
rest or just hang out, were always provided free to all customers of Untitled,
whether they bought anything in the store or not. Steven is truly an expert at the
nearly extinct art of conversation, and always manages to be entertaining and
sincere while remaining steadfastly polite and civilized if he disagrees with you.

I experienced nothing but kindness and grace from Steven in our frequent
conversations, and I have never witnessed him misbehaving or acting
inappropriately with any person in the many years I have known him. In fact, based
on the behavior of Steven that I witnessed and all knowledge of his reputation, I can
honestly say that Steven is probably the kindest man I have ever met. Every day I
was in the store someone was stopping by and warmly greeting if not embracing
Steven with enthusiasm.

Steven's wife Katherine, his two children and even his ex-wife were all treated as
warmly and with the kind of care we would all wish for as family members. I know
for a fact that Steven would pay to have the store covered in his absence in order to
chauffer his ex-wife on out -of -town trips, as she had no driver's license. When I
asked him why he did this, his response was that told in the parable of the senior
monk in a zen community who was found laboring in the hot sun to wash rice for
the temple. He was asked why he would work so hard. His response was, "If I don't

EXHIBIT
A19

do it, who will?" I know Steven labored endlessly at Untitled, and I know his family was the main motivation for it as he told me so.

Steven's kindness and good nature did not limit itself to family, store patrons or his many friends, however. Steven's selflessness and goodwill extended to the community of Sturgeon Bay and greater Door County. I lived in Sturgeon Bay close to downtown for a decade, and only in the past few years have witnessed a renaissance of activity around arts and entertainment in the downtown area. This flowering of civic arts – music, literature, visual arts and most importantly comradeship and conversation - has centered on the Third Avenue corridor. Steven and Untitled have been in the vanguard of this renaissance. The steel bridge songfest has developed into the major cultural event of Door County. Every year, Steven has volunteered Untitled to serve as a venue for live music and his store has been by far the most popular venue. No compensation accrued to Steven for this. Rather, Steven would provide food, drink and often extra cash to the musicians out of his own pocket.  Outside the store, he was a big supporter of Third Avenue Playhouse theater. Steven was motivated by a genuine sense of community and I believe everyone who knows him or was affected by him felt this. He certainly put his money and time where his mouth is when it comes to supporting our community.

I could go on with anecdotes and praise but I think you get the idea. I have known many people for good or ill in my 53 years and I consider myself a good judge of character and generally rather skeptical. If I were forced to say something negative about Steven that I believed with any sincerity I might say that Steven is sometimes too kind. But we both know there is no such thing as someone who is too kind.

Steven Link is a good man who has demonstrated kindness towards all, a genuine and pure love for his family, and a selfless devotion to the life of his small community. Any day he spends without his liberty will be to the detriment of us all.

I thank you for your attention and again humbly ask that you treat my friend with all the mercy and forbearance you are allowed.


Sincerely



Kurt G. Harris MD
██████████████
Santa Barbara CA 93108

Luke MacMillan
~~████████████████~~
Mosier, OR 97040

Hanaway Ross Law Firm
Attn: Atty. Clarence Duchac
clarence@hanaway.com
345 S. Jefferson St.
Green Bay, WI 54301

Honorable Judge,

I am writing in regards to the case concerning Steven Link and the sentencing to take place on June 1 of this year. I met Steven the previous summer while interning with the Third Avenue Playhouse in Sturgeon Bay, an organization for which he formerly served as a board member.

From my first encounter with Steven he showed nothing but goodwill. He had opened up his storefront after hours to allow all the theater employees and board members to get to know the new interns and quickly became a force of positivity in my life. As you may know, it was not uncommon for Steven to open up his store for similar occasions. Though some saw them as a good excuse to simply socialize, there was always a sense community and bolstering of the arts, be it through promoting new local artists and musicians, poetry nights, or simply encouraging literary discussions by way of the setting he provided.

Concerning the rumors and accusations of illicit activity taking place at the store, I must say I was baffled by such reports. In the multiple gatherings I attended at the store I never witnessed any illegal activity, drug related or otherwise, suspected it, or ever felt unsafe or threatened. Given the circumstances, it should be stated that these gatherings often included the legal consumption of alcohol. Although I never actually witnessed any drunken behavior at the store itself, I know that if a friend were unsafe to drive, Steven would occasionally open his basement to them, as to help avoid endangering themselves and the public. Having been in this basement multiple times, I never witnessed anything illegal or out of place there either, and given how open Steven was with the spaces in the bookstore, was surprised that such behavior was suspected.

Even outside of the bookstore I was continually amazed by his altruism. As the summer progressed, I began to see more clearly the network of goodwill in this community and not only how integral a link Steven was in this chain, but all he had done to help form it. Be it lending his truck to an independent business, building shelves and creating light fixtures for the theater, or simply encouraging friends and customers to attend local events or check out other local businesses, Steven consistently remained an agent of support for the community and the arts.



EXHIBIT
A20

I think it must be said that I believe Steven Link poses no threat to society, and in fact, the community of Sturgeon Bay has lost one of it's most integral, honest, and upright members in his absence. Without his presence the community itself has been forced to cope, though I pray his family will not have to do the same. It is my hope that throughout his sentencing mercy and understanding will be kept, and that he can fulfill whatever duty you see necessary while still able to see those he loves, and those who love him.

Sincerely,
-Luke MacMillan

Mr. Clarence F. Duchac, III
Hanaway Ross Law Firm
345 S. Jefferson St.
Green Bay, WI 54301

To the Honorable Judge Greisbach,

I am writing on behalf of my husband and myself to tell you about our experience with Steven
Link. We are retired teachers who have taught in Door County a total of 50 years between us,
and have lived in Door County since 1965. Now that we are retired, I do volunteer work at Feed
My People of Door County, and I also sell used books over the internet. My husband, William
S. Skadden, is a Macintosh computer consultant for Door and Kewaunee Counties.

Bill first met Steven through their mutual interest in music, some time before Steven opened his
book store. I met him when the book store was opened and I went in to introduce myself and
offer to provide some books for his store. Since then we have frequented the book store, buying
books, and selling some to Steven. We have also attended music events at the book store and
enjoyed the social hours before and after them.

We consider Steven to be a friend, and are happy to do so. In my dealings with him regarding
books he has always been fair and honest. Some books which I had in his store on consignment
were sold since the store has been closed, and he notified me of it and made sure I received the
money owed to me. His business has been an important and beneficial addition to our
community.

We have liked and trusted Steven for the years we have known him, and, while we don't know
all the circumstances of his situation, we feel confident that his involvement was not entirely of
his doing. We hope that we have successfully communicated the esteem in which we, and much
of the community hold Steven in, and that you will consider this in granting as lenient a sentence
as possible.
Thank You for your time.

Sincerely,

Nancy M. Skadden
~~███████████~~
Sturgeon Bay, WI 54235
Home phone ~~███████~~
Cell phone ~~████████~~

William S. Skadden
Cell phone ~~████████~~


EXHIBIT
A21

**Clarence Duchac, III**

| | |
|---|---|
| **From:** | Sherri Columbus ~~sherriwithanis@yahoo.com~~ |
| **Sent:** | Monday, April 20, 2015 1:28 PM |
| **To:** | Clarence Duchac, III |
| **Subject:** | Regarding Steven P. Link |

To whom this may concern;

I was hoping that I would be given a chance to speak on behalf of my dear friend Steven. I have known Steven for many years & am a close friend of both his & his wife Katherine. I have always enjoyed Stevens light hearted & easy going manner. Hes one of the most generous & forward moving people I know! He is fun & quick witted & incredibly enjoyable to be around! I trust him. Even when all of this went down I knew there was more to the story than could be told . I felt very strongly that all was NOT as it seemed. I would have ZERO issues in trusting Steven around my own grandchild. Hes a good man. I have watched him with his little Mia & he just lights up in her presence & his love for her is so obvious! I consider him to be a good friend & when I would go home to Sturgeon Bay to visit from California, Stevens shop was the FIRST place I would stop. I lived across the street from his shop & we were quite good friends. Please, I am asking for leniency in regards to his time of detention. Please consider his position in the town he lives. He was a solid & active member of society & was such a joyful active participant in many projects & activities that were so close to my own heart. I love him & I want him to be treated with as much kindness, love & consideration as possible. He has a beautiful little family that loves & needs him with them. Please make that as soon as is humanly possible. We ALL want him HOME & moving forward in his life, in a productive manner. I KNOW he will only have learned from this experience & the fine qualities he already has will only have been made stronger! My heart goes with him & his family at all times. & I TRUST that you will be guided in doing what is fair & just & in the highest good for all concerned.

Thank you for your consideration,
Blessings, Sherri Columbus.

EXHIBIT

A22

May 12, 2015

United States District Court

125 S. Jefferson Street

Green Bay, WI 54301


To Whom It May Concern;


I am writing this letter on behalf of Steven Link and his family.  I am a small businessman and have resided in Door County for the past 40 years. I have come to know the populace of Sturgeon Bay quite well and have known Mr. Link and his fiancée Katherine for several years. Steven is a very forthright and honest individual and has given a great deal to the community of Sturgeon Bay.  Like Mr. Link, I have devoted a great deal of time helping people to make Sturgeon Bay a fine place to reside and raise your family. I consider Steven a friend and I pray that you look favorably on him. Gratias tibi ago.


Thomas Alberts

██████████████, Sturgeon Bay, WI



April, 15, 2015

Dear Honorable Judge Greisbach,

I am writing you regarding my friend, Steven Link who is a defendant in one of your upcoming cases.

I have known Steve since we were in grade school in Illinois. We grew up together and saw each other through all the trials and tribulation that come with it. This current trial breaks my heart.

Steve wants nothing but to help people, and make the world a better place for his children, or anyone's child. He is a dedicated and hardworking man.

I know you have people write you everyday with letter like these and have heard every tale imaginable. I know I can't change the verdict at this point; I just want you to know that Steve is good man, a kind man; he would not hurt anyone, especially a child. I would trust him with my two young boys, no questions asked. He is absolutely not the person he is portrayed as by people who do not know him.

I ask you to please give him the lightest sentence possible. He is my best friend, my brother. I cannot fathom anyone thinking he would purposely do anything close to what he is accused of. Please, not for the sake of me, or his parents or other friends, but for his beautiful four-year old daughter, Mia and his Son, Ronan. They deserve to have their father back to them as soon as possible.

Thank you so much for taking the time to read this.

Sincerely,
Audra Fairchild

Greenbrier, TN 37073

EXHIBIT
A24

May 10, 2015

The Honorable William Griesbach

United States District Judge

Dear Judge Griesbach:


I am writing you in support of Steven Link.

I have known Steve for the past five years and have found him to be a steadfast supporter of our community in many ways. As a small business owner he has continually shown his support through opening his bookstore to many small groups as a venue for local meetings, and music. I met Steven through the Friends of the Sturgeon Bay Library whose efforts help to fund many valued library projects, where he was a valued volunteer and important resource on book valuation. Also, at the Third Avenue Playhouse, a local group bringing live theatre to our small community, where his volunteerism and personal energy I know was important and highly valued.

I have also seen Steven as a caring, loving and devoted father to his children. His separation from them is loss to his family that is incalculable.

In conclusion, any time that Steven is away from his family and our community is a personal loss and a cost to us all. I hope that any such separation if any, is a short one.

Thank you for your consideration.

Sincerely,

Guy S. Fortin, Esq.

EXHIBIT

A25

EXHIBIT
A26

April 27, 2015

Lisa K. Miller

Clarence F. Duchac, III
Hanaway Ross Law Firm
345 S. Jefferson St.
Green Bay, WI 54301

To whom it may concern:

I write to you in hope that you will take into
consideration the condition of sentencing for Steven Link.
I understand the necessity of complying with what
current laws for this charge entail, but I would also
ask that you embrace the necessity to consider
the character of each individual.

Although I have not known the Link family for
a long time, in the time I have known them
that is exactly the word that describes them best -
FAMILY. Steven is not only an attentive, empathic,
and compassionate man, but a huge asset as a
father to both of his children, his current wife (Holly),
and his ex-wife. He takes his role as provider
and caretaker very seriously and believes it to be
a main purpose in life. While the obstacles
he faces may have torn the family apart,
they have overcome and continue to build

not only more trust in each member
individually, but have strengthened their
family as a unit as well. I write not to
plead his case, but rather to testify to his
integrity as a father, husband, son and
successful business owner, as well as a
great friend. Steven has continually
been involved in community affairs and
activities and has been pro active in
Sturgeon Bay business district interests.

The unfortunate circumstances have found
many in the community in disbelief and in
support of the Link family, many have
been transformed by their strength and honor
in the handling of themselves throughout this
ordeal. Steven has touched lives in an
unprecedented way that has allowed personal
growth for everyone involved. I have
witnessed my own spiritual emergence
and transformation as well as Steven's
and consider it an honor to be
a friend, counselor and confidante
of the Link family and Steven
in particular.

Sincerely, and respectfully,

Lisa K. Miller

Alan B. Kassien
~~[redacted]~~
~~[redacted]~~
Sturgeon Bay, WI 54235

26 March 2015

Dear Judge Griesbach,

Regarding the character of Steven P. Link ...

I have known Steven since shortly after he opened Untitled Used & Rare Books, Maps & Ephemera on Third Avenue. He has always struck me as being a very intelligent man who is interested in and knowledgeable about almost any subject one could think of ... the kind of person that looks at you when you speak to him, listens to what you have to say and responds in an appropriate manner.

But intelligence isn't everything, Steven has also shown himself to be a very accepting man, and a giving one too. When my spouse and I participated in our Commitment ceremony a year and a half ago, Steven generously gave us the use of his store for our reception which included nearly 50 family and friends ... and of course he celebrated with us.

In my experience with Steven, he is a fair and honest man. I once bought a hutch that had been used in his store to display books, but was offered for sale when he discovered he needed its space for shelf-space expansion. The price was fair and mutually agreeable. On another occasion Steven was interested in a mantel clock I had just bought, while I was interested in the grandfather clock in his store. Again, the trade was fair and mutually agreeable.

Another less personal observation ... Steven always seems to be willing to share his resources with friends and acquaintances. It was not unusual for Steven to act as the host for birthdays and other celebratory occasions for friends. Monthly poetry readings were routine, and he oftentimes kept his store open for musical performances too.

The world needs more people like Steven.

Sincerely,

Alan B. Kassien



EXHIBIT
A27

April, 28 2015

Dear Honorable Judge Goeisbach

I am writing this letter in regards to a good friend of mine, Steven Link. I've known Steve for just over 20 years now. Over that time we've been roommates, friends, and have been through a lot together. And considering that, this trial he's going through is a little difficult to swallow.

He's a wonderful father, friend, business owner, and a man I have trusted well over the years. And a friend at times a year or two goes by that we don't see each other, and we still pick up where we left off. Friends like that are hard to find these days.

I know you probably get letters like this often, I don't even know if this will reach your desk. But if it does, I ask for mercy on a man who I believe with all my heart would have done anything close to what he was charged. Please, find it in your heart to be easy on him.

EXHIBIT
A28

thank You for Your time to read this, and
Your Consideration.

Sincerely,
Gabriel Fairchild

[redacted]

Greenbrier, Tn 37073

[redacted]

21 May 2015

Hanaway Ross Law Firm
Attn: Clarence Duchac III
345 S. Jefferson St.
Green Bay, WI 54301


To whom it may concern:

I would like to make a statement about Steven Link, and the legal situation in which
he is involved.

Although I have known Steven only a couple years, I've been acquainted with
Katherine Johnson, his wife, for appproximately 6 years. She is an excellent mother,.
In no way would she have allowed her daughter (and Steven's) to be placed in any
jeopardy from the type of crime Steven is involved in, either physically or
emotionally.

While I realize that nothing Steven's and Katherine's acquaintances say will change
the opinion of the court, or the plea that has been entered, I still want to lend my
spiritual and emotional support in the hope that some leniency may be found in the
court's sentencing.

Thank you for your consideration.

Kathleen Cascio
█████████████████
Sturgeon Bay, WI 54235

EXHIBIT
A29

Bruce and Cheryl Bishop

Sturgeon Bay, WI 54235

Your Honor, Judge Griesbach,

I am writing to you on behalf of Steven P. Link.
I understand his sentencing is approaching and would like to
speak on behalf of his character. I have known Steven for
nearly 8 years. He has been a friend to each of my 3 children
and a very dear friend to my daughter, Emilie.
In the years I've known him, our entire family has
frequented his former apartment and his more recent
bookstore. Steven helped my two sons, Matthew & Christopher
when they were band mates by providing a great place to hold
practice in his large apartment. Steven came to every one of
their performances. We even held a birthday gathering there.
We very much appreciated his generosity. Steven was always &
I mean always been there for our daughter Emilie. He helped
her quit smoking with constant hours of Trivial Pursuit and
excellent personal support. Whenever she needed a ride to a
bus station or airport, he never hesitated. These weren't
short trips, many required the entire day or an overnight
stay. His willingness to help meant a lot to us. He never
accepted gas money; Steven was always someone she could trust
and depend on. On more than one occasion when Emilie needed
money, Steven would buy some of her books for more than they
were worth. A few months later and for no special occasion
Emilie would show up with the same books and tell me he gave
them back to her when she visited the book store. Steven has
always been there for her and we so appreciated his giving
nature. Sometimes you meet someone and they fit in so
well, they seem like a member of your family. In fact whenever
I see Steven, he always calls me "Mom". He feels that
familiarity too. He knows how much he means to us.

EXHIBIT
A30

I ask you for leniency in this sentence. Steven is a kind, gentle, intelligent person with a huge heart. I can't imagine him doing very well in a prison atmosphere. He has a family and a very young daughter that needs a father in these early years and a teenage son who depends on his guidance and encouragement. I am asking to please find it in your heart to grant him house arrest or at most a very short sentence. Steven has been a great friend to our entire family and a wonderful community member.

Thank you for your consideration in this matter.

Sincerely,

Bruce and Cheryl Bishop

May 19, 2015

The Honorable Judge-

My name is Ryan Shaw and I am writing this letter out of love for my dear friend Steven Link and his incredible family. I am writing today because I believe Steven is a good man. I am writing today to tell you that I believe that the Sturgeon Bay community is better with Steven in it. I am writing this letter because I believe that Steven is not a threat to this community. I am writing today to ask for leniency in sentencing.

I have had the privilege of knowing Steven since the summer of 2012 and since then he and I have developed a wonderful friendship. Recently I had the privilege of being a part of Steven's wedding. At this event I saw an outpouring of support from friends and loved ones. I saw Steven toast his 16-year-old son and I saw his six-year-old daughter dance and celebrate as her parents were married. While at this happy celebration there was one sad thought that stuck with me through the evening and that was the idea that soon his family would have to find a way to live without him. His family is better with him and he is better with them. This family has been through so many things and they need to stay together.

During my friendship with Steven I have seen countless acts of kindness with no intent to be repaid. I can think of numerous times that Steven has dropped everything he is doing to help a friend in need. One example that comes to mind is on a frigid January day when my girlfriend and I called Steven at 7 AM to ask for help with our car. The car had gotten stuck in a snow bank and the two of us were unable to get the vehicle moved on our own and my girlfriend was running late for work. Steven arrived shortly and told my girlfriend to take his car up to work and he and I would figure out the car. This is one example of hundreds that I could come up with and I know many others could do the same.



EXHIBIT
A31

In Sturgeon Bay Steven has been a staple of the community. His bookstore served as an arts and culture hub, unlike any other. At this store he offered a one of a kind inventory, he also supported local musicians and held monthly poetry readings. As if it were not enough to run a store on his own Steven still found time to support various non-profits throughout the community. He served as a board member at the Third Avenue Playhouse and gave contributions to other theatres and concert venues. Sturgeon Bay is a better place with Steven Link in it.

The most important point I can make in this letter is to stress that I do not believe Steven is a threat to this community. I have seen Steven interact with his son and daughter and all I see is a man who loves them. I have seen Steven offer support to teens and young adults through his store. With these employees I have seen nothing but respect for these young people. Interacting with other adults in the community Steven is still the kind and loving human he has always been. He is a loving person who needs to stay in this community with his family.

Thank you for your time in reading my thoughts. I hope that I have made it clear that Steven is a good father and husband, a truly kind person who will do anything for his friends, a fantastic businessman who has enriched all of Sturgeon Bay, and most of all a safe and trustworthy person. My heart aches at the idea of Steven being separated from his family for any period of time. The thing that I think of most is the amount of time he would lose with his children and that helps no one! Please remember these things in sentencing and thank you again for your consideration.

Sincerely,

Ryan Patrick Shaw

Sturgeon Bay, WI 54235

May 17, 2015

Anne Herring
████████████
Sturgeon Bay, WI 54235
████████████

Re: Character Reference for Steven P. Link

The Honorable Judge:

I am writing on behalf of Steven P. Link who I have know and called a dear friend for 3 years- though it feels like many more. I met Steven though a friend who introduced me to Untitled Used and Rare Books, Maps and Ephemera his bookstore. I couldn't help but become friends with someone who had created a space that made me feel so at home.

Soon after becoming friends with Steven I became friends with Katherine, his wife, and his children, Mia and Ronan. He is dedicated to his family- something I found out very early on in our friendship. He has retained a close working relationship with Ronan's mother who has been one of his biggest supporters through this trying time.

Steven's contributions to the community are almost too many to list. He has been a strong supporter of the local arts community providing a unique venue for live music, and serving on the board of a local theater. His involvement in theater appeared to me to be above and beyond that a typical board member. I can remember one opening night that had to be canceled due to flooding where he came in on a moments notice to help bail water out of the theater and chip ice away from doors to allow water to flow out of backstage.

I ask that you take into your decision all the good that Steven has done and could continue to do in his life. He has been an asset to the community and to those who have been fortunate to call him friend.

Sincerely,



EXHIBIT
A32