UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

---

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                        Case No. 14-CR-223

STEVEN LINK,

      Defendant.

---

**GOVERNMENT'S SENTENCING MEMORANDUM**

---

The United States of America, by its attorneys, James L. Santelle, United States Attorney, and William J. Roach, Assistant United States Attorney, respectfully submits this sentencing memorandum.

**I.    BACKGROUND ON CASE.**

Steven Link was indicted on multiple counts of receipt, distribution and possession of child pornography contrary to 18 U.S.C. § 2252A. As will be more fully set forth below, Link engaged in this activity since at least 2004. He was arrested on September 5, 2014, following execution of a search warrant at his bookstore and a consent search at his residence. A later forensic search of computer equipment seized resulted in the recovery of thousands of child pornography image and movie files.

Link entered a guilty plea to a single count of receipt of child pornography and is scheduled for sentencing on June 1, 2015. The plea agreement calls for the government to recommend a ten-year prison term and any term, up to life, of supervised release.

1

## II. APPLICABLE LAW

As a result of *United States v. Booker*, 543 U.S. 220 (2005), the sentencing guidelines now are effectively advisory. While a sentencing court must still consider the guidelines, it must also consider other factors as well and, in particular, the factors specifically identified in 18 U.S.C. § 3553(a). *Id*.

Under § 3553(a), a court "shall impose a sentence sufficient, but not greater than necessary" to comply with the following purposes of sentencing:

a. To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

b. To afford adequate deterrence to criminal conduct;

c. To protect the public from further crimes of the defendant; and

d. To provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner.

In determining the particular sentence to be imposed, a court also must consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect paragraphs (a) through (d) above; (3) the kinds of sentences available; (4) the types of sentences and sentencing range established by the sentencing guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

## III. ARGUMENT

There should be no doubt that child pornography offenses are extremely serious. The

children depicted are not abstractions or objects, but real people who experienced untold horror in order for the pictures and videos to be produced. And many undoubtedly are still suffering and will continue to suffer the effects of such abuse knowing that their worst days have been recorded and the resulting images traded and viewed by others throughout the world- including within the very community in which they reside.

Nonetheless, child pornography offenses and their corresponding punishments have received recent scrutiny. The United States Sentencing Commission believes that child pornography offenses are extremely serious, but "also concurs with the many stakeholders who contend that the sentencing scheme should be revised to better reflect both technological changes in offense conduct and emerging social science research and also better account for the variations in offenders' culpability and their sexual dangerousness." *Report to the Congress: Federal Child Pornography Offenses*, United States Sentencing Commission, December 2012 (CP Report).

The Commission now recommends that the non-production Guideline should be revised to more fully address three factors: (1) the content of an offender's child pornography collection including the nature of an offender's collecting behavior in terms of volume, the types of sexual conduct depicted in the images, the ages of the victims depicted, and the extent to which an offender has organized, maintained, and protected his collection over time, including through the use of sophisticated technology; (2) the degree of an offender's engagement with other offenders-in particular, in an internet "community" devoted to child pornography and child sexual exploitation; and (3) whether an offender has a history of engaging in sexually abusive, exploitative, or predatory conduct in addition to his child pornography offense. *CP Report at 320.*

The Department of Justice, in a March 5, 2013 letter to the Commission, advocated a

similar position. In the DOJ's view, child pornography sentencing guidelines should reflect the following: (1) how an offender obtains child pornography along with the volume and type of child pornography possessed; (2) how long an offender has been collecting and the attention and care given to his collection; (3) how an offender uses the collection obtained; (4) how an offender protects himself and his collection from detection; and (5) whether the offender creates, facilitates, or participates in a community centered on child exploitation.

That is not to say that the sentencing guidelines in their current state are meaningless. On the contrary, as recently as July 2014, the Seventh Circuit reaffirmed that although the district court is free to consider the *CP Report,* using the guidelines in their present form did not render the defendant's sentence substantively unreasonable. *United States v. McLaughlin* 760 F.3d 699 (7th Cir. 2014) (sentence of 130 months upheld in case involving 150 video and 500 image files of child pornography resulting in guideline range of 151 to 188 months).

The government's recommendation of 10 years imprisonment is well supported when considering the nature and circumstances of the offense, Link's history and characteristics, and the need for the sentence to reflect the seriousness of the offense, afford adequate deterrence, protect the public, and provide adequate treatment.

    *a.*     *Nature and circumstances of the offense*.

        1. Nature of Link's child pornography collection.

The child pornography files found on Link's computer and storage devices include child sexual assaults of all types containing some of the most disturbing content imaginable. For example, one of the files identified in the possession charge (Count 4) of the indictment is entitled "*Pthc ptsc 9yo Jenny compilation beastiality.avi[1]*" and is described as a 15:23 minute

---

[1] The abbreviations "pthc" and "ptsc" are very common child pornography search terms and are short for preteen hardcore

video of an approximate 9 year old female engaged in sexual contact with an adult male and then a dog. The minor female involved has thin legs and no breast development. At various points, she is blindfolded, has a dog collar around her neck, and her hands and feet are tied to a metal rope. The minor performs oral sex on an adult male's penis followed by the adult male inserting his penis into her anus. Later, the minor female performs oral sex on a male dog. Throughout the movie, the minor female states such things as "Make me come.", "Thank you, Daddy.", "I like doggy cock but yours is better.", and "Daddy, will you come in my mouth so I can taste it." Shockingly, Link not only downloaded this video but then purposefully decided to save this video to his external hard drive.

The investigation that led to both a search warrant and a consent search of Link's computer equipment is familiar to this Court given the motion hearing conducted in this case. As the Court will recall, law enforcement located child pornography on both an Acer laptop (laptop) found in Link's bookstore, as well as a MyBooks external hard drive (MyBooks) found at his residence. There is no credible evidence to suggest that anyone other than Link was responsible for the downloading, distributing, and storing of child pornography that occurred using these devices.

The forensic examination of the laptop revealed that the file sharing program eMule was installed on June 22, 2014. The following day, eMule records confirm that numerous child pornography movie files were downloaded, eventually transferred over to MyBooks, and then deleted from the laptop. More specifically, eMule records indicate the following: (1) Between June 23rd and September 4th, approximately 238 movie files, totaling approximately 20.3 GB in file size, and the majority titled with names suggestive of child pornography were downloaded.

---

and preteen softcore.

5

Case 1:14-cr-00223-WCG   Filed 05/28/15   Page 5 of 16   Document 32

SEE ATTACHMENT 1; (2) Approximately 27.4 GB of mostly child pornography files were uploaded or shared by Link during that same time period; (3) Approximately 1800 "clients" or users were involved in the upload and download of child pornography during this time period; (4) Nine files were downloaded the evening before the search warrant was executed on the bookstore in September 2014. Eight of the 9 files appeared to contain child pornography. One of the files was entitled "(PTHC) Open f08-12 yo girl fuck with man and little boy.avi." and is described as depicting an approximate 12 year old female engaged in sexual intercourse with both an adult male and minor male. A second movie file entitled "12yo Pasha and 11yo Dick" depicted two prepubescent minor males engaged in anal intercourse; and (5) eMule search terms found on the laptop included "young," "webcam," "11yo," "12yo," "13yo," "jailbait," "hiddencam," and "preteen model."

Once the movie/image files were obtained via emule, Link transferred some but not all files to his MyBooks. The precise number of child pornography movie and image files stored on the MyBooks is difficult to determine given the volume of the collection. Law enforcement determined that MyBooks contained approximately 841 GB of pornography consisting of 37,100 movie/image files (approximately 31,014 image files and the remainder movie files). At least 800 GB of this total, consisted of images of teenage girls engaged in sexually explicit conduct. Of that 800 GB total, law enforcement advised that at least half of that amount involve minors believed to be between 5 and 16 years of age engaged in various forms of sexually explicit conduct.

Link's collection of child pornography was not only vast but organized. Most of the child pornography was found in a folder entitled "Xfer." Within "Xfer" there were 686 subfolders. Multiple "incoming" folders were located within these subfolders consistent with law

enforcement's belief that Link used earlier versions of file sharing software to obtain child pornography. One of those subfolders was entitled "Donex." Within Donex there is another subfolder designated "X" that contained child pornography files. SEE ATTACHMENT 2. Also within Donex there are additional folders entitled "incoming" containing approximately 2,000 teen files, and "new folder" containing approximately 130 child pornography movie files with names such as "13 yo fantasia," "13 yo school girl" and "12 and 13 yo sex."

In addition to Donex, another folder entitled "Incoming" contained approximately 1,192 movie and image files. As stated above, the content of these movie files involved all types of child sexual assaults including acts of bestiality. A forensic search of all files with the word "bestiality" in the title revealed 6 movie files (in addition to the one detailed in Count Four) that contained images of minors engaged in sexually explicit images with animals. Approximately 162 movie files had the abbreviation "PTHC" in the file name. Other movie files depicted the anal and vaginal sexual assault of minors believed to be well under 12 years of age. Several of the movie files found in Donex folder were charged in the possession count of the indictment. Three of those files are identified as follows;

> (a) *Pthc ptsc 9yo Jenny compilation beastiality*- description provided above.
> (b) *Stickam-alexis with dog*- this is a 17.52 minute video depicting an approximate 10-12 year old female spraying a substance on her vagina. A dog then licks her vagina area.
> (c)*Youngvideomodels-9yo Daphne Invites You to Fuck her Doggy Style*- a 12:53 minute video of an approximate 9 year old female posing with her legs spread exposing her vagina.

Short of viewing individually the thousands of video files on the MyBooks, law enforcement attempted to identify some of the child pornography movie files by searching for

7

movie files with an age in the file title. The results of the search show the following number of sexually explicit movie files that included an age referenced in the title:

-5 yo- one movie file
-6 yo - two 2 movie files;
-8yo-one movie file;
-9yo - 17 movie files, one depicting the brutal anal rape of a minor female in a vehicle;
-10 yo -26 movie files
-11yo- 58 movie files
-12 yo - 134 movie files; and
-13 yo- 146 movie files.

2. Length of time collected and care given to collection

Offenders who engage in repeated and long-term child pornography collecting or trafficking should be distinguished from offenders who are relative newcomers to this type of criminal conduct. The forensic review of Link's computers/storage devices revealed child pornography files with properties suggesting that he obtained the files in 2004. It appears that in 2007, 2008, and 2009, Link obtained numerous child pornography movie and image files that he then transferred in November 2013, to the MyBooks.

The attention and care given the collection is evident in the number of folders Link created and his cataloguing of images. As noted above, Link had a disturbingly large collection of child pornography that was filed within over 600 folders. Given his most recent downloads, it appeared Link's primary interest included sexually explicit movie files of minors between 10 and 14 years of age.

3. Use of child pornography collection

The DOJ believes a proper consideration for the Court is how an offender uses his child pornography collection. Does the individual collect child pornography merely to trade for adult pornography images that are of interest? Is the child pornography collection a fraction of the size of an otherwise large adult pornography collection?

Link's use of child pornography is at least two-fold. First, as indicated above, he distributed child pornography via the eMule peer to peer program. The benefit to Link for doing this is great. Given the nature of file sharing programs, the more files he distributed to others, the quicker the program allowed him to download files of interest. Of course, this is a matter of public concern. The eMule program distributes files anonymously. Link does not know who is downloading his shared images or what those individuals are doing with the images. Some viewers of child pornography show those images to minor victims in order to desensitize them to such conduct and aid in the sexual abuse of them. *CP Report* 312.

The evidence also suggests that Link has a sexual interest in children and obtains sexual gratification looking at sexually explicit images of them. On June 23, 2014, the bookstore security cameras captured Link masturbating in front of the laptop at 11:00 am, 11:25 am, 1:35 pm, and at 6:16 pm. A later forensic exam of the laptop revealed that approximately 44 child pornography videos were downloaded that day starting at approximately 10:25 am and continuing throughout the day. The security cameras also recorded Link masturbating on June 22, 2014 at approximately 5:50 pm while watching the laptop and again on multiple occasions throughout the day of June 24[th.] The forensic exam revealed that approximately 65 child pornography videos were downloaded via emule to the laptop on June 24th. The government cannot state definitively that Link was masturbating while viewing child pornography movie files but certainly all indicators are that such was the case.

The significance of this should also be of concern to the public. Some researchers suggests that offenders who have "masturbated to child pornography become desensitized to images that previously may have been horrifying to the offender." *CP Report* at 78. Further, "child pornography offenders also may develop or increase deviant sexual interests and distorted

9

attitudes about children as appropriate sexual partners." *Id.* Finally, other researchers suggest that "child pornography permits a progression from viewing child pornography to sex offending against minors." *Id.* at 312. The government has no proof that Link ever acted out sexually against minors. But some researchers conclude it is fair to say that given a robust child pornography collection, it is "the single best indicator of what he wants to do." Kenneth V. Lanning, Office of Juvenile Justice and Delinquency Prevention, *Child Molesters: A Behavioral Analysis–For Professionals Investigating the Sexual Exploitation of Children*, 107 (5th ed. 2010).

      4.   Protection of child pornography collection.

The DOJ believes that another factor the Court should consider is how an offender protects himself and his collection from detection. Those that use encryption or engage in other efforts to avoid detection create a greater threat to public safety. Although he did not encrypt any of his files, Link attempted to insulate himself from law enforcement detection in other ways. First, he obtained internet service through an apartment (occupied by Kory Murphy) located above the bookstore. This potentially served to distance himself and his bookstore from law enforcement scrutiny. Second, he created a WiFi connection that allowed for him to claim that anyone with the password would have been in a position to download illegal material that could be traced to the bookstore. Third, Link frequently- if not exclusively- kept the laptop and the MyBooks external drive at the bookstore. Thus, Link was able to (and did) point the finger at others as being in the position to have downloaded and stored the child pornography images. Finally, law enforcement detected a remote access program called teamviewer on the laptop. This allowed Link the ability to download or transfer child pornography images using the laptop from a remote (safe) location.

5. Engagement in Child Pornography Community

The U.S. Sentencing Commission and DOJ believe that another aggravated sentencing factor is the extent to which an offender is involved in a child pornography community. The concern with this factor is to enhance the sentence for both the offender who communicates directly with others for purposes of encouraging the sexual abuse of children and the offenders who create and administer the forums where such communication is taking place. *Id.* at 324. In Link's case, there is no evidence that he traded child pornography in any other capacity other than through file sharing programs. Nonetheless, peer to peer file traders like Link who peddle child pornography "can contribute to development of distorted beliefs about children as sexual partners." *Id.* at 93.

6. Other sexually exploitive conduct

Finally, the U.S. Sentencing Commission recommends that a sentence reflect whether the offender has engaged in "non-criminal sexually deviant behavior suggesting sexual dangerousness." *Id.* at 325. The Commission recommends the guidelines "address a broader range of offenders' sexual dangerousness and provide for a more nuanced approach depending on the number and type of acts of sexually dangerous behavior in an offender's history." *Id.*

Link has a history of criminal and non-criminal sexually deviant behavior. Link surreptitiously recorded images of other young adults engaged in sexually explicit conduct and/or nudity at the bookstore. He then made video files of the conduct and saved them to his MyBooks. More specifically, Link created approximately 172 videos of young adult and adult females disrobing, using the bathroom facilities, or engaged in sexual activity in the public bathroom or downstairs room. At least one of those females that displayed her breasts was 17 years of age. There is no evidence to suggest these videos were distributed to others. However,

11

because it appears the individuals depicted did not know they were being recorded, it nonetheless is a potential violation of state law. *See Wis. Stats*. § 942.09 Representations Depicting Nudity.

Links activity of surreptitiously recording others in private acts of nudity was not limited to the bookstore. Law enforcement located a folder on MyBooks entitled "Old Docs" that contained many subfolders and sexually explicit movie files depicting young adult and adult females using the bathroom in Link's former residence located on Cherry Lane in Sturgeon Bay. Link resided at that location in approximately 2010. The videos were titled with such names as "green sweater" consistent with how the female depicted was dressed. Interspersed with these videos were additional child pornography videos that appeared to have been downloaded from the internet.

Law enforcement also located within a MyBooks folder several sexually explicit videos that Link made of himself with Adult Female 1 and Adult Female 2. More specifically, law enforcement located several videos, which were produced in 2009, capturing Link attempting to have sexual intercourse with Adult Female 1. During one of the videos, Adult Female 1 is face down during the act, is motionless, and appears to be either sleeping or under the influence of drugs/alcohol. In another video, Link records Adult Female 1 who appears to be under the influence of a drug or intoxicant. Law enforcement also located approximately 10 videos of Link engaged in sexual activity with Adult Female 2 that were taken between August 29, 2014 and September 1, 2014. Law enforcement does not know whether this female consented to the recording.

The nature and circumstances of the offense make this an aggravated case warranting significant punishment. As argued above, the children depicted in the pornography suffer a direct and primary emotional harm when another person possesses, receives, or distributes the material.

It is impossible to retract or control copies of the images once distributed via the internet. The harm to victims is often life-long and thus even a "passive" consumer who merely receives or possesses the images directly contributes to this continuing victimization. *United States v. Sherman,* 268 F.3d 545, 547 (7th Cir. 2001) ( "One of the reasons for criminalizing the 'mere' possession of child pornography is to create an incentive for the possessor to destroy the material, and alleviates some of these harms to the child depicted.").

The receipt and distribution of child pornography has also been linked to the sexual abuse of new victims. *CP Report* 312. It does so through the use of child pornography to "groom" children into believing sex with adults is permissible. For other offenders, viewing child pornography can create a "tipping-point effect" that facilitates a progression from viewing such images to sex offending against minors. Finally, the promotion and sharing of child pornography validates the sexual abuse of children and may lead to the further production of child pornography. *Id*.

  b. *History and characteristics of the defendant*.

Link described himself to the Presentence Report writer as a "good person and loving father and family man." PSR ¶ 24. In truth, he has used the internet to obtain, share and view thousands of child pornography files. Link has used his bookstore as a front to secretly record females in their private moments. He has used his friendship with Kory Murphy to steal Murphy's personal, intimate photographs of a prior girlfriend. Others describe Link as a pervert, encouraging young adults to change in the bookstore bathroom so he can secretly record them. And Link is cunning enough to keep all this conduct secret from those closest to him, including Elizabeth Johnson, his now wife. Initially, Link was manipulative enough to convince Johnson of his innocence and that Murphy was to blame. Even until today, those supporting him likely have

13

no idea of the nature of his child pornography collection or what he was doing with it. This adds an element of dangerousness to Link's character.

  c. *Need for the sentence to reflect the seriousness of the offense, afford adequate deterrence, protect the public, and provide adequate treatment.*

These sentencing factors in part overlap with the nature and circumstances of the offense. The first requirement that the sentence reflect the seriousness of the crime is a directive to the Court to make the punishment fit the crime or, in other words, punish justly. To that end, the more serious the crime, the greater the need for retribution and the longer the sentence should be.

As argued above, when child pornography is produced in conjunction with the sexual abuse of children, the harm to the child victims is magnified and perpetuated. *New York v. Ferber*, 458 U.S. 747, 759 (1982). Such is the case even when the defendant has not produced child pornography. Adam Walsh Protection and Safety Act of 2006, (codified at 18 U.S.C. § 2251 note) (Every instance of viewing images of child pornography represents a renewed violation of the privacy of the victims and a repetition of their abuse). As also noted above, some courts and researchers have reasonably concluded that the production and distribution of child pornography "may incite or encourage others to sexually abuse children." *United States v. Irey*, 612 F.3d 1160 1208 (11th Cir. 2010).

Second, this Court is to consider both general and specific deterrence. Congress, the Supreme Court, and the Sentencing Commission believe general deterrence is a very important factor when considering an appropriate sentence in a child pornography case. *Irey*, 612 F.3d at 1206. (citing *New York v. Ferber*, 458 U.S. 747, 760 (1982) ("The most expeditious if not the only practical method of law enforcement may be to dry up the market for [child pornography] by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product"); *United States v. Barevich*, 445 F.3d 956, 959 (7th Cir. 2006) ("Transporting and

14

Case 1:14-cr-00223-WCG   Filed 05/28/15   Page 14 of 16   Document 32

receiving child pornography increases market demand. The avenue Congress has chosen to weaken the child pornography industry is to punish those who traffic in it."). Nowhere is this clearer than in the following passage from *United States v. Goldberg,* 491 F.3d 668, 672 (7th Cir. 2007):

> Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded – both consumed himself and disseminated to others. The greater the customer demand for child pornography, the more that will be produced. Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so more will be produced.

Some, including the authors of the *CP Report*, have challenged the validity of the claim that significant punishments for the distributors and possessors of child pornography will reduce the "market" for child pornography. *CP Report* 98. Some claim the size and ready availability of child pornography makes destroying or reducing the market an unlikely proposition. But the Seventh Circuit found validity in the market thesis notion that consumers of child pornography influence producers in ways that lead to increased harm to children. *McLaughlin*, 760 F.3d 705. This Court should follow the rational of the *McLaughlin* decision.

Third, this Court is to protect the public from further crimes of the defendant. In other words, the Court is to impose a sentence that specifically deters the defendant from future crimes. This is a significant factor when defendant has initially denied his involvement, has fooled and manipulated others for years, and has collected and likely viewed thousands of image and movie files of minors engaged in sexually explicit conduct. The need to protect the public is further heightened when he has secretly recorded members of the public engaged in sexually explicit conduct or minimally disrobing and exposing their naked body.

Finally, the need to provide adequate treatment must be considered by this Court.

15

Depending of course on the length of sentence imposed and placement within the Bureau of Prisons, sexual offender counseling will be provided to Link. Once released, additional counseling and treatment can be a condition of what the government will argue should be a lengthy period of supervised release.

## Conclusion

For the foregoing reasons, the government respectfully requests the Court sentence Link to a ten-year term of imprisonment with a life term of supervised release.

Dated at Green Bay, Wisconsin, this 27th day of May, 2015.

Respectfully submitted,

JAMES L. SANTELLE
United States Attorney

By: s/William J. Roach
WILLIAM J. ROACH
Assistant United States Attorney
WI Bar Number 1018756
Attorney for Plaintiff
Office of the United States Attorney
Eastern District of Wisconsin
205 Doty Street, Suite 301
Green Bay, Wisconsin 54301
Telephone: (920) 884-1066
Fax: (920) 884-2997
E-Mail: WILLIAM.J.ROACH@usdoj.gov